# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-3467

_____

| | | |
|---|---|---|
| L.L. Nelson Enterprises, Inc.; Laura L. Nelson-Smith, | * | |
| | * | |
| Plaintiffs/Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| County of St. Louis, Missouri, | * | |
| | * | |
| Defendant/Appellee, | * | |
| | * | |
| Curley Hines; Marcus Lipe, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Richard Robinson, | * | |
| | * | |
| Defendant/Appellee, | * | |
| | * | |
| David Rodriguez, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Gene Overall; James D. Buckles; | * | |
| Laurie Main; Independent Eviction | * | |
| Agency, LLC; James Siebels; Paul Fox, | * | |
| | * | |
| Defendants/Appellees. | * | |

_____

Submitted: September 22, 2011
Filed: March 9, 2012
_____

Before RILEY, Chief Judge, COLLOTON, and GRUENDER, Circuit Judges.
_____

COLLOTON, Circuit Judge.

L.L. Nelson Enterprises, Inc., doing business as Landlords Moving Service, Inc., and its principal Laura L. Nelson-Smith (collectively, "Landlords Moving") brought civil rights claims under 42 U.S.C. §§ 1983 and 1985 against the County of St. Louis, several employees of the County, and a competitor firm Independent Eviction Agency, LLC, and its principal, James Siebels (collectively, "IEA"). The amended complaint alleged violations of constitutional rights under the First, Fifth, and Fourteenth Amendments and sought damages and declaratory and injunctive relief. The district court dismissed the plaintiffs' amended complaint for failure to state a claim against all but three defendants, and entered a final judgment pursuant to Federal Rule of Civil Procedure 54(b).[1] Landlords Moving appeals. We reverse the dismissal of Landlords Moving's First Amendment retaliation claim against defendant Laurie Main, affirm the dismissal of all other claims, and remand for further proceedings.

_____

[1]The district court dismissed without prejudice the claims against defendant David Rodriguez for lack of timely service. The court observed that defendant Marcus Lipe had appeared through counsel and that defendant Curley Hines was in default, but concluded that a motion for entry of default against both defendants may be futile in light of the court's order dismissing the claims against the other defendants. On this basis, the court found no just reason to delay entry of final judgment as to the defendants who moved successfully to dismiss the amended complaint.

I.

The amended complaint alleges the following facts. The St. Louis County Sheriff's Office has for decades permitted real estate owners to hire private moving companies like Landlords Moving and IEA to remove their tenants' personal property during the execution of eviction orders. For a number of years, deputy sheriffs Laurie Main, Hines, Lipe, Rodriguez, and Richard Robinson allegedly executed an illegal kickback scheme in which they funneled eviction business to private moving companies in exchange for cash payments. Landlords Moving initially participated in this "illegal payments scheme," but began to express reluctance in 2003 and then withdrew from participation by mid-2004.

The scheme's participants implemented a written schedule in February 2004 for the execution of eviction orders. This schedule singled out Landlords Moving and limited the days on which it could receive eviction business. Landlords Moving complained about the schedule to Gene Overall, who was then the sheriff of St. Louis County, Paul Fox, the County's director of judicial administration, and others at the sheriff's office. After Landlords Moving exchanged a number of written and oral communications with the sheriff's office, Main announced to most of the deputy sheriffs named in the amended complaint that she would put Landlords Moving out of business.

With the cooperation of both the deputies and the entire sheriff's office, Main allegedly implemented procedures and practices that were designed to disadvantage Landlords Moving. These new practices, it is alleged, eventually shifted a substantial portion of Landlords Moving's business to IEA and other competitors. According to the amended complaint, Fox, Overall, and later Sheriff James Buckles either

-3-

participated in, knew of, or should have known of this conspiracy, yet took no action to halt it.

In the second half of 2004, Landlords Moving contacted the United States Attorney's Office for the Eastern District of Missouri and reported the illegal kickback scheme and alleged retaliatory practices of the sheriff's office. Landlords Moving cooperated with federal prosecutors in the subsequent investigation and prosecution of various officials, including Hines, Lipe, Robinson, and Rodriguez. Laura Nelson-Smith also testified for the prosecution in federal court, and all of the defendants have known for some time of Landlord Moving's role in the investigation and prosecutions. The amended complaint alleged that in retaliation, Main and others in the sheriff's office "have continued and even increased the extent of their conspiracy," taking such measures as forcing Landlords Moving's clients to "wait inordinately" for enforcement of their eviction orders.

Landlords Moving filed a four-count amended complaint against each of the eleven defendants. The first two counts arise under 42 U.S.C. § 1983 and allege the deprivation of constitutional rights. As relevant here, Count I alleges that the illegal kickback scheme violated Landlord Moving's rights under the Due Process Clause, Equal Protection Clause, and the Takings Clause of the Constitution, while Count II avers that retaliation against Landlords Moving for protesting the kickback scheme infringed its rights to freedom of speech and to petition for the redress of grievances under the First and Fourteenth Amendments. Count III is a claim for damages under 42 U.S.C. § 1985, alleging that the defendants conspired to retaliate against Landlords Moving because of Laura Nelson-Smith's testimony in federal court. In the fourth count, Landlords Moving seeks declaratory and injunctive relief "to define reasonable commercial and noncommercial public expectations with respect to tasks to be performed by the Sheriff's offices in connection with eviction executions," in order to "effect a reasonably complete redress of plaintiffs' injuries."

The County, Overall, Buckles, Fox, Main, Robinson, and IEA moved to dismiss Landlords Moving's amended complaint. The district court granted the motions, concluding that the amended complaint did not plausibly allege either the deprivation of a constitutional right or that the defendants deterred Nelson-Smith from testifying. The district court entered final judgment as to these defendants pursuant to Rule 54(b), and Landlords Moving appeals.

II.

We review *de novo* a district court's decision to grant a motion to dismiss, accepting the allegations of the amended complaint as true. *See Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 816 (8th Cir. 2011). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility, in turn, requires that the claim plead facts from which a court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). At the same time, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

The essential elements of a constitutional claim under § 1983 are (1) that the defendant acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). The district court assumed the first element was satisfied, *see Monroe v. Pape*, 365 U.S. 167 (1961), but determined that the amended complaint alleged no constitutional violation. Whether Landlords

-5-

Moving adequately alleged the deprivation of a constitutional right is the principal disputed question on appeal.

## A.

We first consider the several allegations made under Count I of the amended complaint. Landlords Moving relies in part on the "doctrine of unconstitutional conditions" to describe its claim under Count I. This doctrine, as a general rule, provides that although a State may have the power to deny a privilege altogether, it may not condition the grant of such a privilege on a private party's surrender of a constitutional right. Decisions along this line date to *Frost & Frost Trucking Co. v. Railroad Commission*, 271 U.S. 583 (1926), where the Supreme Court held that a State could not condition a private carrier's use of highways on issuance of a certificate and submission to regulatory control of the State, because such regulation violated the due process rights of the private carrier under the *Lochner*-era jurisprudence then prevailing. *Id.* at 593-94. More recently, the Supreme Court applied the doctrine in the context of the Takings Clause, explaining that "the government may not require a person to give up a constitutional right—here the right to receive just compensation when property is taken for public use—in exchange for a discretionary benefit conferred by the government where the benefit has little or no relationship to the property." *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994). Landlords Moving's favored example is *Blackburn v. Snow*, 771 F.2d 556 (1st Cir. 1985), where the court held that a State could not condition a citizen's privilege to visit her brother at a county jail on submission to an unreasonable strip search that infringed upon the visitor's rights under the Fourth Amendment. *Id.* at 568.

Courts and commentators have wrestled with the parameters of the unconstitutional conditions doctrine, *see generally* Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1413 (1989), and there is no

precedent that directly addresses a scenario like this one. Landlords Moving suggests that the closest analogue is *Roma Construction Co. v. aRusso*, 96 F.3d 566 (1st Cir. 1996). The district court in that case allowed that "[p]erhaps a bribery demand by municipal officials in order to facilitate zoning, permits, and the like, deprives a citizen of constitutional due process rights," but ruled that once the citizen voluntarily paid the bribe, he waived any future right to sue under § 1983. 906 F. Supp. 78, 84 (D.R.I. 1995). The court of appeals reversed, concluding that a reasonable jury could infer that the plaintiffs were "innocent victims of a criminal enterprise," because their payments were made pursuant to "coercive extortion" and did not constitute "voluntary payment of bribes." 96 F.3d at 574, 576. The court remanded for further proceedings without discussing what specific constitutional right the municipal officials might have violated.

Landlords Moving asserts summarily that a bribery demand by public officials results in a constitutional due process violation when the bribe is paid, because the payment is "contrary to law." It also claims that the demand for bribery payments amounted to a taking of its property in violation of the Takings Clause of the Fifth Amendment, as incorporated through the Fourteenth. Whatever the merits of a possible due process claim by an innocent victim of extortion, *cf. Hudson v. Palmer*, 468 U.S. 517, 533 (1984), or a Takings Clause claim based on an obligation imposed by the State to pay money, *cf. W. Va. CWP Fund v. Stacy*, No. 11-1020, 2011 WL 6062116, at *6 (4th Cir. Dec. 21, 2011), we do not think Landlords Moving can assume the mantra of the "innocent victim" described in *Roma Construction* for the period during which Landlords Moving was paying bribes. The amended complaint alleges that county officials referred business only to those moving companies that made "*illegal* cash payments" and were "*willing* and able" to satisfy the demands for "*unlawful* payments." Am. Compl. ¶¶ 20, 24 (emphases added).

Allegations in a complaint are binding admissions, *Jackson v. Marion Cnty.*, 66 F.3d 151, 153 (7th Cir. 1995), and a party who "willing[ly]" makes payments to the State cannot mount a successful claim based on the Due Process Clause or the Takings Clause. When a person voluntarily surrenders liberty or property, the State has not *deprived* the person of a constitutionally-protected interest. *Zinermon v. Burch*, 494 U.S. 113, 117 n.3 (1990) ("If only those patients who are competent to consent to admission are allowed to sign themselves in as 'voluntary' patients, then they would not be deprived of any liberty interest at all."); *Lee v. Pine Bluff Sch. Dist.*, 472 F.3d 1026, 1030 (8th Cir. 2007). Similarly, a voluntary transfer of money to the State in exchange for referrals of business does not amount to a taking by the State. *See Yee v. City of Escondido*, 503 U.S. 519, 527 (1992) (stating that "the Takings Clause requires compensation if the government authorizes a *compelled* physical invasion of property") (emphasis added); *Meriden Trust & Safe Deposit Co. v. FDIC*, 62 F.3d 449, 455 (2d Cir. 1995); *McCarthy v. City of Cleveland*, 626 F.3d 280, 287 (6th Cir. 2010) (McKeague, J., concurring). There is also authority holding that a party cannot obtain redress under § 1983 for damages caused by its own illegal acts *in pari delicto* with another, *see Dudley v. Stoneman*, 653 F.2d 125, 126 (4th Cir. 1981) (per curiam), but we need not address how that defense applies in a § 1983 action, because the claims as pleaded in Count I simply fail on the merits. *Cf. Pinter v. Dahl*, 486 U.S. 622, 633-35 (1988) (describing the standard for determining when the *in pari delicto* defense applies to a private action under any of the federal securities laws).

We further conclude that Landlords Moving's amended complaint does not state a claim that the making of illegal cash payments in response to demands of county officials constituted a violation of the Equal Protection Clause. According to the amended complaint, when Landlords Moving made illegal cash payments in exchange for the referral of business, it was treated the same as all other private moving companies. As the amended complaint alleges no differential treatment of

-8-

similarly situated persons during the period when Landlords Moving made unlawful payments, it fails to state an equal protection claim. *See Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th Cir. 2006).

B.

Landlords Moving next appeals the dismissal of its First Amendment claim under Count II of the amended complaint. Landlords Moving contends that the defendants violated the company's rights under the First Amendment to petition for redress of grievances and to freedom of speech by retaliating against Landlords Moving for complaints that it made to the sheriff and the director of judicial administration. We conclude that Landlords Moving adequately pleaded a First Amendment claim against defendant Main, and that the district court's order of dismissal should be reversed in part.

The amended complaint alleged that in 2003 and the first half of 2004, Landlords Moving "demonstrated reluctance" to continue its participation in the illegal payments scheme. In February and March 2004, it is alleged, the sheriff's office implemented a schedule for the execution of eviction orders that limited the days on which eviction orders for clients of Landlords Moving could be executed. Landlords Moving complained to Sheriff Overall and Director of Judicial Administration Fox, questioned the motivation for the schedule, and asserted that the schedule discriminated against Landlords Moving without justification.

Landlords Moving asserts that after a number of communications to the sheriff's office, Main announced to most of the other deputy sheriffs named in the amended complaint that "she was going to put Landlords Moving out of business," and that she implemented two particular procedures that were designed to disadvantage Landlords Moving. The first was "the maintenance of a deliberately

and invidiously discriminatory list of available private moving companies" that placed Landlords Moving at the bottom and IEA at the top. The amended complaint alleges that when real property owners with eviction orders asked Main to refer them to a private moving company that could assist with the eviction, she read the names on her referral list from top to bottom, "intending to enable and to encourage" the property owner to choose IEA or any private mover other than Landlords Moving. The second practice was to forewarn those tenants who resided in property owned by clients of Landlords Moving that the tenants were subject to eviction, and to encourage them to vacate the premises immediately before the date of eviction. The alleged purpose of this practice was to disadvantage Landlords Moving's business. The amended complaint asserts that these procedures, "in combination with all other discriminatory and retaliatory practices and procedures," shifted a substantial portion of Landlords Moving's longtime clientele to IEA or other movers, and inhibited substantially the growth of Landlords Moving's business.

To establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege (1) that it engaged in a protected activity, (2) that the defendants responded with adverse action that would "chill a person of ordinary firmness" from continuing in the activity, and (3) that "the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). We think that Landlords Moving pleaded these elements adequately to survive a motion to dismiss on its claim against Main.

Landlords Moving alleged that it engaged in protected activity by petitioning the sheriff and director of judicial administration, and by expressing its dissatisfaction with the schedule imposed by the sheriff's office. The defendants counter that Landlords Moving's complaints concerned only its private interests and did not involve a matter of "public concern," such that the complaints were not protected activity. When the government takes adverse action against a public employee, an

-10-

independent contractor, or another actor with whom the government has a comparable pre-existing commercial relationship, the First Amendment is implicated only when the speech or petition that motivated the retaliation involves matters of public concern. *See Connick v. Myers*, 461 U.S. 138, 142 (1983); *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 678 (1996); *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 721-22 (1996). Otherwise, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior," *Connick*, 461 U.S. at 147, or a comparable decision made with respect to a contractor. *Umbehr*, 518 U.S. at 677-78. The defendants argue that the same standard should apply to Landlords Moving.

In considering whether the "public concern test" applies to a retaliation claim, this court has distinguished between the government's role as employer or contractor and the government's role as sovereign. *See Heritage Constructors, Inc. v. City of Greenwood*, 545 F.3d 599, 602-03 (8th Cir. 2008). Where the government has an employment relationship or a similar contractual relationship with a complainant, then the complainant's speech is protected only when it addresses a matter of public concern. *See Smith v. Cleburne Cnty. Hosp.*, 870 F.2d 1375, 1381 (8th Cir. 1989). But where the complainant's relationship with the government is not analogous to that of employee-employer, and the government acts as sovereign rather than as an employer or contractor in taking the alleged retaliatory action, then the complainant's First Amendment claim is not limited by the public concern test. *See Heritage*, 545 F.3d at 602; *see also Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586-88 (6th Cir. 2008).

The amended complaint supports a plausible inference that Landlords Moving was not a public employee or contractor and did not have an analogous relationship that would call for limiting protection under the First Amendment to speech on matters of public concern. The amended complaint alleges that the County did *not*

employ personnel to remove property from buildings subject to eviction orders, but rather permitted property owners "to hire their own private moving contractors" to assist in executing eviction orders. Count II alleges, in part, that the County deliberately generated "scheduling conflicts" to interfere with Landlords Moving's ability to serve its private clients. At the pleadings stage, therefore, we conclude that Landlords Moving's complaints to the sheriff and director of judicial administration were protected activity. *See Blackburn v. City of Marshall*, 42 F.3d 925, 932-35 (5th Cir. 1995) (refusing to apply the "public concern" requirement to a towing operator who alleged that the city retaliated against his complaints about city bidding procedures by revoking his police radio frequency privileges, thereby thwarting his participation in a towing rotation system). We need not address at this juncture whether Landlords Moving's complaints may have involved both its private interests and a matter of public concern, assuming the latter were required. *See Belk v. City of Eldon*, 228 F.3d 872, 879-80 (8th Cir. 2000).

The district court thought Landlords Moving did not plead adverse action sufficient to chill a person of ordinary firmness, but we respectfully disagree. The amended complaint alleges that Main's actions, in retaliation for Landlords Moving's complaints to Overall and Fox, helped to shift a "substantial portion" of Landlords Moving's business to other movers, and to "inhibit substantially" the growth of Landlords Moving's business, and caused "substantial" economic injury. This court has said that while a certain level of "embarrassment, humiliation and emotional distress" would not chill a person of ordinary firmness, *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002), even the selective issuance of parking tickets to a complaining citizen could support a finding of unlawful retaliation, due to the "concrete consequences" of such misdemeanor charges. *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003). We do not think it would "trivialize the First Amendment," *Naucke*, 284 F.3d at 928, to hold that a substantial threat to one's business is enough to deter a person of ordinary firmness from speaking or petitioning

-12-

the government.  Landlords Moving's allegations are thus sufficient to survive the pleadings stage on this element.[2]

As for the final element of a First Amendment retaliation claim, Landlords Moving adequately alleges that Main's adverse actions against the company were motivated by Landlords Moving's complaints to Overall and Fox about the new schedule.  The amended complaint alleges that "after a number of written and oral communications regarding [the new eviction schedule] from plaintiffs and their legal counsel to the Sheriff's office, Laurie Main announced to most of the [deputy sheriffs named as defendants] that she was going to put Landlords Moving out of business."  The amended complaint further asserts that "[w]ith the cooperation thereafter of the deputies and the entire Sheriff's office, Main went on openly to implement particular procedures or practices deliberately and, from an objective point of view within the office, obviously designed to disadvantage Landlords Moving severely."  Having alleged a chronology to support its circumstantial claim of retaliatory action, Landlords Moving concludes that Main adopted the discriminatory measures "in retaliation specifically against the Landlords Moving complaints about and criticism of the Imposed Schedule."  At the pleadings stage, these allegations support a plausible inference that Main knew of Landlords Moving's complaints and acted with retaliatory motive.  We therefore conclude that Landlords Moving has stated a claim against Main for violation of its First Amendment rights.  Whether the allegations can be proved, of course, is a matter for further proceedings.

---

[2]The district court also thought the retaliation claim failed because the alleged retaliation took place before Landlords Moving's cooperation with authorities.  This may or may not be true with respect to Landlords Moving's cooperation with the United States Attorney's Office, but the amended complaint alleges retaliation for Landlords Moving's complaints to the sheriff and director of judicial administration, which preceded the alleged retaliatory acts.

-13-

We do not believe, however, that the amended complaint adequately alleges a First Amendment claim against the other defendants. Deputy Sheriff Robinson is not mentioned by name in Count II, and the general references to other deputies are insufficient to charge him with the alleged constitutional violations. The amended complaint alleges only that Main announced to other deputies that *she* was going to put Landlords Moving out of business, that she "directed" other staff members to follow one disputed procedure, that she "took steps to confirm" that other deputies followed the second procedure, and that she acted with "the cooperation" of "the deputies." The amended complaint does not allege that Robinson was one of the deputies to whom Main made her announcement, alleging only that "most" deputies named in the amended complaint heard the statement. There is no allegation that Robinson ever read a list of private moving companies to a property owner, or that he selectively encouraged occupants to vacate premises when Landlords Moving was hired to remove remaining property. Nor is there an allegation that Robinson acted with retaliatory motive in conducting any such activity. The district court properly dismissed the claims against Robinson.

Supervisors like Overall, Buckles, and Fox cannot be held vicariously liable under § 1983 for the actions of a subordinate. *See Iqbal*, 129 S. Ct. at 1948. To state a claim, the plaintiff must plead that the supervising official, through his own individual actions, has violated the Constitution. *Id.* Where, as here, the alleged constitutional violation requires proof of an impermissible motive, the amended complaint must allege adequately that the defendant acted with such impermissible purpose, not merely that he knew of a subordinate's motive. *Id.*

The amended complaint in this case does not adequately allege that Overall, Buckles, or Fox took adverse action against Landlords Moving with retaliatory motive. Landlords Moving alleges that each of the three supervisors "either participated himself in the conspiracy and retaliation against [Landlords Moving],

-14-

knew of the conspiracy and retaliation but failed to take action to halt it, or should have known of the conspiracy and retaliation but deliberately or willfully failed to discover it and halt it." Am. Compl. ¶ 49. Like the complaint in *Iqbal*, which alleged that supervisory officials "knew of, condoned, and willfully and maliciously agreed to" subject the plaintiff to harsh conditions for an illegitimate reason, these asseverations against Overall, Buckles, and Fox are conclusory, and they are not entitled to a presumption of truth. 129 S. Ct. at 1951. The amended complaint asserts that Main took her actions "openly," and that they were "obviously designed to disadvantage Landlords Moving," but this probably does not suffice to allege even that the actions were known to the particular supervisory officials named as defendants, *see Wilson v. City of N. Little Rock*, 801 F.2d 316, 323 (8th Cir. 1986), and it assuredly does not plead adequately that the supervisors acted with impermissible *purpose* as required by *Iqbal*. The amended complaint does allege that Fox "was informed on many occasions throughout 2004" about "the irregularities within the Sheriff's office," and then deliberately failed to take corrective action. Am. Compl. ¶ 53. But even assuming the alleged retaliation is among the "irregularities," this assertion is insufficient to allege that Fox acted with a retaliatory motive. We therefore conclude that the district court properly dismissed the claims against Overall, Buckles, and Fox.

The amended complaint also fails to state a claim against the County. A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. A municipality can be liable only if a municipal "policy or custom" caused a plaintiff to be deprived of a federal right. *L.A. Cnty. v. Humphries*, 131 S. Ct. 447, 450 (2010); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Landlords Moving contends that the "entrenched bribery scheme" run from the sheriff's office constituted a "custom or usage" sufficient to establish municipal liability.

-15-

As we have concluded that the district court properly dismissed Count I of the amended complaint, we deal here only with the question whether the County can be held liable for the alleged retaliatory actions taken by Deputy Main after Landlords Moving complained to the sheriff and director of judicial administration about the schedule implemented in February and March 2004. The amended complaint does not allege that Main acted pursuant to municipal policy or custom in retaliating against Landlords Moving. It asserts that after Landlords Moving complained to Overall and Fox, Main announced that she was going to put Landlords Moving out of business, that she "devised and implemented" new procedures and practices, that she directed other staff members to follow procedures she instituted, and that she took steps to ensure that other deputies carried out the new procedures. Count II of the amended complaint does not allege that the County had a widespread custom of retaliating against those who complained to the sheriff or director of judicial administration. The district court thus properly dismissed the claims against the County.

Finally, the amended complaint fails to allege adequately that IEA participated in the retaliation. Because IEA is a private actor, to prove a § 1983 claim against it, Landlords Moving must establish that IEA reached a mutual understanding with public officials that it would participate in retaliating against Landlords Moving. *See Dossett v. First State Bank*, 399 F.3d 940, 951 (8th Cir. 2005). With respect to the First Amendment retaliation claim, the pleadings allege only that IEA was placed "on the top" of the discriminatory mover referral list, that Main encouraged property owners to select IEA for executing evictions, and that IEA benefitted from these practices. It is true that Count II of the amended complaint incorporates allegations made in Count I, but the conspiracy alleged in Count I differs materially from the conspiracy outlined in Count II. The amended complaint asserts in Count I that IEA conspired with the other defendants to employ "various manipulatory devices within the Sheriff's office, including but not limited to manipulation of a deputies work

schedule that deliberately disadvantaged Landlords Moving." Am. Compl. ¶ 26. This alleged conspiracy began in 2003 and was motivated by Landlords Moving's "demonstrated reluctance" to continue paying bribes and "eventual withdrawal" from participation in the scheme. *Id.* ¶ 25. Count II, by contrast, alleges that the defendants retaliated against Landlords Moving at a later date, in 2004, because of complaints that Landlords Moving made to Overall and Fox in 2004 about the work schedule described in Count I. Count II contains no allegation that IEA engaged in retaliatory conduct based on the complaints to Overall and Fox, let alone that IEA reached a meeting of the minds with Main to conspire against Landlords Moving by retaliating for these complaints. The incorporation by reference of allegations in Count I that IEA conspired with others in 2003 to manipulate the work schedule does not suffice to plead that IEA participated in the alleged retaliation in 2004. We therefore conclude that the claim against IEA was properly dismissed.

C.

Count III of Landlords Moving's amended complaint asserts a claim under 42 U.S.C. § 1985 based on alleged intimidation of witnesses. The claim arises from Laura Nelson-Smith's role in aiding the federal investigation and prosecution of deputy sheriffs who participated in the kickback scheme. Landlords Moving alleges that "in retaliation against the plaintiffs for having aided the discovery and prosecution of the illegal scheme and the scheme's principals and for having testified in federal court against them," those principals "have continued and even increased the extent of their conspiracy and campaign with all the defendants to injure Landlords Moving." Am. Compl. ¶ 60. On appeal, Landlords Moving clarifies that its claim is grounded in § 1985(2).

Section 1985(2) provides, in relevant part,

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(2).[3]

By its terms, the statute requires a conspiracy, but "[t]his court has held that a corporation and its agents are a single person in the eyes of the law, and a corporation cannot conspire with itself" to violate 42 U.S.C. § 1985. *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1156 (8th Cir. 1983). Under this intracorporate conspiracy doctrine, a local government entity cannot conspire with itself through its agents acting within the scope of their employment. *Id.*; *Richmond v. Bd. of Regents of Univ. of Minn.*, 957 F.2d 595, 598 (8th Cir. 1992); *cf. McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1038 (11th Cir. 2000) (en banc) ("We have long recognized an exception to the applicability of the intracorporate conspiracy doctrine for intracorporate criminal conspiracies arising under 18 U.S.C. § 371 of the federal criminal code."). The referral of moving companies to property owners seeking the execution of evictions was within the scope of employment for deputies and staff members in the sheriff's

[3]The district court dismissed this claim on the ground that "Plaintiffs do not contend they were deterred from testifying," but "rather, they contend that they [were] retaliated against for having cooperated with the authorities." The statute, however, does forbid conspiracies to injure a witness "in his person or property on account of his having so attended or testified." 42 U.S.C. § 1985(2); *see Haddle v. Garrison*, 525 U.S. 121, 125 (1998).

office, even though the amended complaint alleges improprieties in the execution of these duties. *See Cross*, 721 F.2d at 1157 n.7. Therefore, to plead a plausible claim under § 1985, Landlords Moving must allege that the private-party defendants, IEA, participated in the alleged conspiracy.

The only possible direct reference to IEA in Count III is an allegation that Main and other employees of the sheriff's office "increased the extent of their conspiracy and campaign *with all the defendants* to injure Landlords Moving by acting in concert to shift clientele from Landlords Moving to Independent Eviction and other movers." Am. Compl. ¶ 60 (emphasis added). The amended complaint, however, alleges no action by IEA to join or to further an alleged conspiracy. The pleading states merely that IEA and other movers gained additional business as clients or potential clients of Landlords Moving shifted their business. These statements are insufficient to plead IEA's involvement in a conspiracy. Count III does incorporate Count I, including the allegation that IEA participated in a conspiracy to use "manipulatory devices" that disadvantaged Landlords Moving in 2003, but these allegations do not support a plausible inference that IEA participated in a different conspiracy to retaliate for Nelson's later participation in the federal investigation and prosecution. Because the remaining alleged co-conspirators were all employees of the County acting within the scope of their employment, Landlords Moving's § 1985 claim was properly dismissed.

D.

Count IV of the amended complaint seeks declaratory and injunctive relief. The district court, having resolved all remaining claims against Landlords Moving, dismissed this claim on the ground that the Declaratory Judgment Act does not provide an independent basis for jurisdiction. Because we reverse the dismissal of Landlords Moving's First Amendment retaliation claim against Main, we also reverse

dismissal of the claim for declaratory and injunctive relief against Main, and remand that claim for further consideration.

\* \* \*

For the foregoing reasons, we reverse the dismissal of Landlords Moving's claim against defendant Main for alleged violations of Landlords Moving's rights under the First Amendment, and we reverse the dismissal of Landlords Moving's claims for declaratory and injunctive relief with respect to that claim. We affirm the dismissal of all other claims and remand for further proceedings.

_____