# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3446
_____

Arlena Kelly

*Plaintiff - Appellant*

v.

City of Omaha, Nebraska; Greg Petersen; Kevin Denker; Jane Does; John Does

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: October 20, 2015
Filed: February 18, 2016

_____

Before WOLLMAN, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Arlena Kelly ("Kelly") filed suit under 42 U.S.C. §§ 1983 and 1985 against the City of Omaha ("City"), former Omaha code inspector Greg Petersen ("Petersen"), chief Omaha code inspector Kevin Denker ("Denker"), and various unidentified Jane and John Does. Kelly claims that these parties violated her rights under the Fourth, Fifth, and Fourteenth Amendments to the federal Constitution, as well as under various sections of the Nebraska constitution. Kelly also claims that the defendants

conspired to deter her from seeking judicial relief from their conduct and to deprive her of equal protection of the law and equal privileges and immunities under the law. The district court[1] dismissed Kelly's suit pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). We affirm.

## I.

"In this appeal from the grant of a motion to dismiss, we accept as true the well-pleaded allegations in the amended complaint." *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 836 (8th Cir. 2014).

Kelly is an African-American woman who resides in Omaha, Nebraska, where she also owns various rental properties. At a time unspecified but presumably prior to 2003, Petersen called Kelly and demanded that she meet with him at one of her properties to discuss concerns about property-code violations.[2] At this meeting, Petersen offered to give Kelly favorable treatment with respect to these violations in exchange for sexual favors. Petersen further threatened to fine Kelly, initiate criminal proceedings against her, and ensure that she would be unable to rent her properties in the future if she did not submit to these advances. After Kelly repeatedly rejected Petersen's advances, he caused unspecified "criminal citations" to be issued against her. Kelly claims that she had not committed any criminal conduct, but her fear of further retaliation led her to plead guilty to one of these charges.

---

[1] The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

[2] Kelly does not provide the dates for any alleged misconduct prior to November 18, 2011. She does state, however, that the defendants' pattern of misconduct dates back to "prior to 2003," and she claims that this phone call and meeting comprise her "first interaction" with Petersen. We infer from these allegations that Petersen's alleged misconduct commenced prior to 2003.

Petersen's retaliation persisted after this guilty plea. Petersen continually entered Kelly's property without a warrant or Kelly's consent, and he frequently demanded that she meet him either on her property or at the City offices. When she met him at the offices, police officers accompanying Petersen threatened to arrest her if she did not sign citations. During this period, the City denied her an occupancy permit for one of her properties, and Kelly believes that this denial was punishment for her complaints against Petersen and her testimony and actions during the court proceedings that preceded her guilty plea. Kelly heard from another housing inspector that Petersen had directed everyone in the department to deny Kelly permits until she met with Petersen. Petersen also contacted the bank with which Kelly had mortgaged her properties and informed them that the properties were in violation of the City's housing codes.

In 2011 and 2012, the City of Omaha, Denker, and other unidentified individuals took various actions against Kelly, including imposing fines, threatening to criminally prosecute Kelly and foreclose on her properties, and holding her properties in a "violated status" that has prevented her from leasing them to tenants. Kelly claims that she is innocent of any behavior that could have led to these penalties, but she was threatened with further retaliation and penalties if she contested the violations or spoke to anyone, including to a judge or court, about the defendants' conduct. According to Kelly's opening brief, these latest instances of misconduct took place long after Petersen had ceased working in the permits and inspections department. Kelly, however, believes that these acts constituted further retaliation for her rejection of Petersen's advances.

Kelly filed suit against the City, Petersen, Denker, and several Jane and John Does, whose identities and relationships with the City are unknown but who allegedly acted in concert with the named defendants. Kelly claims under 42 U.S.C. § 1983 that all of these defendants violated her rights under the Fourth, Fifth, and Fourteenth Amendments by "depriving her of liberty and property without due process of law,

imposing housing standards that are arbitrary and unknown, demanding sexual favors to stop arbitrary enforcement of Omaha's housing laws, and engaging in illegal trespasses and searches of her properties." Kelly also sues these defendants under 42 U.S.C. § 1985, claiming that the defendants conspired to intimidate her in order to deter her from obtaining a lawyer or appealing her citations and to prevent her from testifying truthfully in the criminal proceedings brought against her. Kelly further claims that the defendants conspired to deprive her of the equal protection of the law and equal privileges and immunities under the law.

The district court granted the defendants' motion to dismiss these claims, finding that Kelly's complaint had presented bare legal conclusions rather than facts allowing the court to draw the reasonable inference that the defendants could be liable under either § 1983 or § 1985. Kelly now appeals.

II.

We review *de novo* a district court's dismissal for failure to state a claim, taking all facts alleged in the complaint as true. *Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010). Rule 12(b)(6) allows a defendant to move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In making this determination, we must draw all reasonable inferences in favor of plaintiffs. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).

A.

Kelly first argues that the district court erred when it dismissed her claims under § 1983. In order to state such a claim, a plaintiff must allege that an official acting under the color of state law violated rights guaranteed either by the Constitution or by federal statute. *Grey v. Wilburn*, 270 F.3d 607, 611 (8th Cir. 2001). Because Kelly's complaint does not include an "express statement" that she is suing the individual defendants in their individual capacities, we consider her suit to be "against the defendants in their official capacity." *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). A plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer and therefore must establish the municipality's liability for the alleged conduct. *Id.* In order to state a claim for municipal liability under § 1983, a plaintiff must plead facts demonstrating that the defendants violated a constitutional right either "pursuant to official municipal policy" or as part of "a custom or usage with the force of law." *Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978). Misconduct among a municipality's employees must be "continuing, widespread, [and] persistent" to establish such a custom. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). In addition, the municipality will not be liable unless policymaking officials exhibit "[d]eliberate indifference to or tacit authorization of such conduct . . . after notice to the officials of that misconduct." *Id.* Under this standard, Kelly's complaint failed to state a § 1983 claim with respect to any of the defendants' alleged misconduct.

First, Kelly's sexual harassment allegations against Petersen failed to state a claim because she did not plead facts showing that this harassment represented part of a municipal policy or custom supporting such behavior. We previously have held that "[i]ntentional sexual harassment by persons acting under color of state law violates [the equal protection clause of] the Fourteenth Amendment and is actionable under § 1983." *Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 455 (8th Cir. 2001).

However, even if Kelly's sexual harassment allegations constituted an otherwise valid equal protection claim under § 1983,[3] Kelly failed to plead facts that establish municipal liability for Petersen's actions. Kelly nowhere alleges that Petersen's alleged sexual advances resulted from any official municipal policy authorizing his behavior. Kelly also failed to allege any facts relating to other perpetrators or victims of such conduct, which might have indicated that sexual harassment was sufficiently widespread among City officials to constitute a "custom or usage with the force of law." *See Ware*, 150 F.3d at 880. Finally, Kelly did not allege facts showing that policymaking officials had notice of or authorized Petersen's conduct. *See Mettler*, 165 F.3d at 1204. Kelly's pleadings refer to "complaints against Petersen," but she does not explain to whom she made these complaints and does not allege that any incident of sexual harassment took place after she made those complaints. Even if other officials knew about the fines and other penalties that Petersen initiated, Kelly alleges no facts showing that other officials knew that Petersen's actions were retaliation for Kelly's rejection of his advances rather than appropriate administrative measures. Accordingly, Kelly's allegations against Petersen fail to state a claim for municipal liability under § 1983.

---

[3] The district court found that Kelly's allegations regarding Petersen's sexual harassment were insufficient to state an equal protection claim because Kelly did not allege that similarly situated persons who were not members of a protected class were treated differently. Kelly did allege, however, that "[s]imilarly situated persons who were not members of the same protected classes as Kelly were treated differently" and that she was "not aware of any men or Caucasians who were offered leniency for code violations in exchange for sexual favors." Although Kelly's allegations may be sufficient to state a sexual harassment-based equal protection claim against Petersen individually, we need not decide that issue because, as explained above, Kelly sued Petersen only in his official capacity and has not alleged facts demonstrating the City's liability for Petersen's actions.

Second, Kelly failed to state a claim with respect to the alleged actions of Denker and the unidentified Jane and John Does—either in connection with her sexual harassment claim against Petersen or as an independent claim that these defendants violated her federally protected rights. Kelly claims that these defendants sought to punish her for refusing to have sexual relations with Petersen, thus implying that the wrongful fines, permit denials, and other abuses she alleges represent part of her equal protection claim for sexual harassment. However, Kelly failed to plead any facts connecting Petersen's behavior, which he allegedly initiated prior to 2003, to the first alleged action by any other City official, which, according to the complaint, took place in 2011. Without supporting facts, this large gap in time prevents us from accepting Kelly's bare assertion that support for the sexual misadventures of a former employee prompted the City's permits and inspections department to adopt a policy targeting Kelly's properties.

Nor do Kelly's allegations against these defendants state a claim independent of Petersen's alleged sexual harassment. Kelly argues that the defendants' imposition of various fines and citations violated her due process rights, but she does not allege that she appealed any of the alleged penalties to the building board of review, *see* Omaha Mun. Code, ch. 43, art. I, § 43-62, or to the appropriate Nebraska district court, *see* Neb. Rev. Stat. § 25-1901. This failure to exhaust available state remedies precludes Kelly from seeking relief under § 1983 for violations of her due process rights. *See Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000). Kelly also does not allege that any court overturned the criminal conviction that resulted from her guilty plea, a prerequisite for seeking damages for that conviction under § 1983. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994). Finally, Kelly has not described the circumstances of the alleged searches of her properties or the relief sought for any resulting harm with sufficient specificity to state a § 1983 claim for any violation of the Fourth Amendment. *See Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

Because Kelly's complaint contained no facts showing that Denker or any unnamed City employee violated her constitutional rights, we do not reach whether Denker, as chief code inspector, was a policymaking official or whether his role in the alleged conduct permits an inference that the City adopted a policy targeting Kelly. Regardless of Denker's authority or involvement, the facts Kelly alleged failed to state a plausible claim for relief under § 1983. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive [§ 1983] claim."). Accordingly, the district court did not err in granting the defendants' motion to dismiss that claim.[4]

B.

Kelly also argues that the district court erred when it dismissed her claim under 42 U.S.C. § 1985. This statute provides a cause of action for damages sustained as a result of conspiracies to obstruct justice, 42 U.S.C. § 1985(2), as well as conspiracies to deprive individuals of equal privileges and immunities and equal protection under the law, 42 U.S.C. § 1985(3). Kelly asserts a claim under both sections. She alleges that Petersen's harassment and subsequent acts of retaliation by Petersen and other officials stemmed from a conspiracy to deprive her of equal privileges and immunities and equal protection under the law, and she claims that these defendants conspired to punish her for seeking judicial relief from this treatment and to threaten her with further punishment if she sought such relief in the future.

---

[4] Kelly's § 1983 claim also included allegations that the defendants violated the Nebraska constitution. However, because § 1983 provides a cause of action only for alleged deprivations of rights guaranteed by federal law and because Kelly brought no independent state-law claims, we do not address the merits of these allegations. *See Grey*, 270 F.3d at 611.

In order to state a claim for conspiracy under § 1985, a plaintiff "must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989). This standard requires that "allegations of a conspiracy [be] pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action." *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989) (quoting *Myers v. Morris*, 810 F.2d 1437, 1454 (8th Cir. 1987). Kelly failed to allege facts showing that any of the defendants' alleged misconduct arose from any such meeting of minds.

First, Kelly failed to allege facts showing that Petersen's harassment or subsequent retaliation arose from an agreement between Petersen and Denker or other City officials. The complaint's only reference to any communication that allegedly took place between Petersen and other officials was the claim that Petersen, at some unspecified date, directed other members of the permits and inspections department to deny Kelly permits until she met with him. This allegation falls short of demonstrating that defendants reached a "meeting of minds" directed towards violating Kelly's constitutional rights. *See Nelson*, 876 F.2d at 59. Kelly does not allege that any department officials—much less those named in the complaint—knew that Petersen's reasons for wanting to meet with Kelly were inappropriate. Nor does she allege facts connecting Petersen's harassment to measures that other officials took long after Petersen left the department. Given these shortcomings, we cannot infer that Petersen conspired with any of the other defendants to violate Kelly's rights or prevent her from seeking judicial relief. *See City of Omaha*, 883 F.2d at 652-53.

Without facts connecting the actions of other City employees to Petersen's alleged harassment, Kelly's allegations against these employees also fail to state a claim under § 1985. Kelly alleges that the City and Denker fined her, held her property in a "violated status," and threatened her with further retaliation and penalties if she sought judicial relief from their conduct. However, Kelly failed to specify any

agents other than Denker through which the City took these alleged actions, and she does not allege any facts showing how and when these agents came to an agreement to violate Kelly's rights through such conduct. *See Nelson*, 876 F.2d at 59.

Furthermore, even if we were to infer from the facts Kelly does allege that Denker and the unidentified officials did reach an agreement, the intracorporate conspiracy doctrine precludes Kelly's conspiracy claim against these defendants. Because a conspiracy by its nature involves multiple parties, this doctrine provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." *L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir. 2012). Government agents can act within the scope of their employment duties "even though [a] complaint alleges improprieties in the execution of these duties." *Id.* (holding that "[t]he referral of moving companies to property owners seeking the execution of evictions was within the scope of employment for deputies and staff members in the sheriff's office" even where employees used those referrals to execute a kickback scheme and to punish a moving company seeking to end that scheme); *see also Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 n.7 (8th Cir. 1983) (finding alleged acts of company's agents within the scope of their employment where those acts included making "false entries" in plaintiff's employment records, improperly denying the plaintiff overtime pay, and "physically batter[ing]" the plaintiff). Kelly does not allege that City employees took or threatened to take any action other than to penalize her for supposed violations of the City's housing codes. Although Kelly "alleges improprieties in the execution of these duties," this fact alone is insufficient to evade the intracorporate conspiracy doctrine. *See L.L. Nelson Enters.*, 673 F.3d at 812. Because the City could not conspire with itself "through its agents acting within the scope of their employment," Kelly failed to allege a conspiracy under § 1985. *See id.*

## III.

For the foregoing reasons, we affirm the district court's dismissal of Kelly's claims under Rule 12(b)(6).

_____