# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-1463

_____

James Brown, M.D.

*Plaintiff - Appellant*

v.

Marc Linder, in his individual and official capacities

*Defendant - Appellee*

------------------------------

Foundation for Individual Rights and Expression, formerly known as Foundation
for Individual Rights in Education

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: October 20, 2022
Filed: January 4, 2023

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

James Brown and Marc Linder both work for the State of Iowa. Brown is a urologist at the University of Iowa Hospitals and Clinics; Linder is a professor at the University of Iowa College of Law.[1] After Linder criticized Brown's expert testimony in a case unrelated to this one, Brown sued Linder under 42 U.S.C. § 1983, alleging that Linder retaliated against him for engaging in constitutionally protected speech. The district court[2] dismissed Brown's claim on multiple grounds, including that Brown failed to allege plausibly that Linder's conduct was under color of state law. We affirm.

**I.**

According to the complaint, Brown provided expert testimony for a meat-processing company in litigation about the company's compliance with labor regulations. As a board-certified urologist, Brown was asked to opine on the health consequences of the company's bathroom-use policy for its employees. Before, during, and after Brown's testimony, Linder made it known that he disapproved of Brown's support for the company's policy.

First, in the days before Brown's testimony, Linder "registered a verbal complaint" to Karl Kreder, the head of UI's urology department, about Brown. Along with the complaint, Linder sent a series of emails to Kreder in which he referred to Brown's "self-confessed money-driven report, deposition, and hearing testimony." Then, during Brown's testimony, Linder appeared in the gallery wearing a t-shirt that said "People Over Profits." Following the testimony, Linder continued to condemn Brown by making comments in local newspaper articles. In one article, published in both the *Waterloo-Cedar Falls Courier* and the *Cedar*

---

[1]For simplicity, we refer to both entities as "UI."

[2]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

*Rapids Gazette*, Linder stated that Brown's testimony "could have unleashed . . . terrible consequences for workers of Iowa."  In another, published in UI's student newspaper, *The Daily Iowan*, Linder called Brown a "hired gun" who "had never even published a single scholarly article on urinary incontinence frequency/urgency."  These articles attributed Linder's comments to "Marc Linder, a UI law professor whose focus is on labor law" and "Marc Linder, UI Professor of Law," respectively.

In addition to these published comments, Linder allegedly criticized Brown's testimony by stating or implying that Brown wanted "to [M]ake America Great Again by helping his customer," "subordinate[d] . . . his medical ethics" in order "to pay his kids' college tuition," and wished for workers to "urinate less and kill animals more."  Brown does not say when, in what form, or to whom Linder made these criticisms.

Brown says that Linder's "multi-faceted retaliatory vendetta" caused him and his family emotional and psychological distress.  Others expressed to Brown their concerns about Linder.  Kreder told Brown that he was worried about Brown's safety and advised him to hire a lawyer.  Another UI colleague also recommended that Brown hire a lawyer and told Brown that Linder "is harassing the s**t out of you."  To protect himself and his family from Linder, Brown bought a gun and a dog.

Brown sued Linder, bringing a First Amendment retaliation claim under § 1983, as well as various state-law defamation and false-light claims.  Linder moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The district court granted Linder's motion as to the § 1983 claim, concluding that it suffered from two independently fatal defects:  it did not plausibly allege that Linder acted under color of state law or that his conduct would chill a person of ordinary firmness from

engaging in protected speech. As for the other claims, the court declined to exercise supplemental jurisdiction and remanded them to state court.

## II.

Brown appeals the dismissal of his § 1983 claim, which we review *de novo*. *See Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotation marks omitted); *see* Fed. R. Civ. P. 8(a)(2). A claim is facially plausible if "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010). Although we draw all reasonable inferences in Brown's favor, we will affirm the dismissal if his complaint offers mere "labels and conclusions," "naked assertions," or a "formulaic recitation" of the elements of his claim. *See id*. at 817-18.

Section 1983 provides a cause of action against anyone who, "under color of" state law, deprives a person of federally guaranteed rights. To state a claim under § 1983, a plaintiff must allege facts sufficient to show that the defendant's injurious conduct was "fairly attributable to the State," *Yassin v. Weyker*, 39 F.4th 1086, 1090 (8th Cir. 2022), rather than carried out in a "purely private capacit[y]," *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005).

Brown argues that his complaint contains ample facts that together plausibly allege that Linder acted under color of state law. These include that Linder (1) identified himself as a state employee when he criticized Brown in the newspaper articles, (2) relied on "the prestige of his official position with [UI] to gain credibility with his audience," and (3) "used the instrumentalities and resources of the State of Iowa to facilitate his retaliatory conduct." Brown further argues that the complaint adequately pleads state action because it alleges, and Linder himself does not

-4-

contest, that Linder was acting within the scope of his UI employment when he carried out the retaliatory conduct.

We agree with the district court that Brown failed to plead adequately that Linder's retaliatory actions were under color of state law.[3] Contrary to Brown's insistence, our case law is clear that a state employee, merely by publicly identifying himself as such, does not act under color of state law. *See Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535-36 (8th Cir. 2014). In *Magee*, we held that a plaintiff failed to plead that a police officer acted under color of state law when her complaint alleged only that the officer identified himself as a state employee in a newspaper editorial disparaging the plaintiff. *Id*. We explained that to act under color of state law, a state employee must "exercise power possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." *Id*. at 535 (brackets omitted). Because the complaint failed to identify any relationship between the officer's conduct and the performance of his duties as a state employee, the plaintiff did not adequately allege conduct under color of state law. *Id*. at 535-36 ("Nothing in [the] complaint indicates that [defendant's] actions were made possible by, or undertaken in, his position as a police officer.").

Brown argues that *Magee* is distinguishable because in that case there were no allegations that the officer was exercising official duties or acting within the scope of his state employment, whereas Linder himself concedes that he was acting within the scope of his employment when he criticized Brown. Brown contends that because a state employee "generally . . . acts under color of state law while acting in his official capacity," *West v. Atkins*, 487 U.S. 42, 50 (1988), Linder's retaliatory conduct was under color of law.

Brown is wrong. Even assuming that a public-university professor acts in his official capacity or within the scope of his employment when he comments on public

---

[3]We thus need not consider the district court's separate conclusion that Brown failed to allege that Linder's conduct would chill a person of ordinary firmness from engaging in protected speech.

affairs,[4] it would not necessarily follow that he acts under color of state law. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 324 (1981) (holding that a public defender does not act under color of state law when "exercising her independent professional judgment in a criminal proceeding"). Indeed, we have suggested that, at least for certain state employment, whether a defendant's conduct is "fairly attributable to the state" depends more on the degree of control that the state exercises over such conduct than on the mere fact that the conduct was within the scope of the defendant's employment. *See Montano v. Hedgepeth*, 120 F.3d 844, 851 (8th Cir. 1997). In *Montano*, we held that a state prison chaplain did not act under color of state law when conducting ecclesiastical activities within the scope of his employment. *Id.* We observed that, because a prison chaplain's pastoral acts are constitutionally enshrined and not "subject to governmental pressures," such acts, unlike his administrative or managerial acts, are not "fairly attributable to the state." *Id.* at 850-51. *Montano* thus demonstrates that "[e]ven when state employees are performing the services for which the state pays them, they may not be state actors while performing functions that the state has no right to control." *See Hall v. Witteman*, 584 F.3d 859, 866 (10th Cir. 2009).

Accordingly, accepting as true all of Brown's well-pleaded factual allegations and drawing all reasonable inferences in his favor, we conclude that his complaint does not adequately allege that Linder acted under color of state law when he rebuked Brown's expert testimony. The bare assertion that Linder identified himself as a UI law professor and acted within the scope of that employment when he criticized Brown is not enough to allege plausibly that Linder's conduct was state action. *See Magee*, 747 F.3d at 536; *Montano*, 120 F.3d at 850-51. Nothing in Brown's complaint indicates that Linder's criticisms involved an exercise of "power possessed by virtue of state law" or were "made possible only because [Linder] [wa]s clothed with the authority of state law." *See Magee*, 747 F.3d at 536. And absent from the complaint is any detail about what Linder's official duties as a state

---

[4]*See Garcetti v. Ceballos*, 547 U.S. 410, 438 (2006) (Souter, J., dissenting) (stating that public-university professors "necessarily speak and write pursuant to official duties" (internal quotation marks and ellipsis omitted)).

employee include or how his conduct was facilitated by state resources. *See id.* Without facts like these, Brown fails to allege that Linder's condemnation was anything other than "purely private." *See Dossett*, 399 F.3d at 947. Brown's allegations are therefore exactly the sort of "labels and conclusions" that cannot survive a Rule 12(b)(6) motion. *See Hamilton*, 621 F.3d at 817.

At the end of the day, we do not doubt that the public might regard a law professor's views on expert testimony as particularly authoritative. Indeed, it is certainly possible that Linder's occupation brought attention to, or elevated the credibility of, his criticism of Brown. Nonetheless, that Linder happens to work for a public university rather than a private one does not, by itself, mean that his conduct was under color of state law.

## III.

For the foregoing reasons, we affirm the district court's dismissal of Brown's § 1983 claim.

_____