# United States Court of Appeals
## For the Eighth Circuit
_____

No. 20-1834
_____

Brenda Davis; Frederick Stufflebean

*Plaintiffs - Appellees*

v.

Buchanan County, Missouri

*Defendant - Appellant*

Harry Roberts; Dan Hausman; Ron Hook; Mike Strong; Jody Hovey; Brian Gross; Natalie A. Bransfield; Dustin Nauman; Advanced Correctional Healthcare, Inc.; Catherine Van Voorn, MD; Ann Marie Slagle, LPN; Ryan Crews, Warden; Corizon Health, Inc., Dft. terminated on 5/7/2018. Dft added back on 9/4/2018, Amended Complaint, Doc. 78.; Donna Euler, RN; April Powers, also known as April Griffin, also known as April Helsel; Amy Mowry; Alice Bergman; Fredrick Covillo; Michelle Munger; Karen S. Williams

*Defendant*s
_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph
_____

Submitted: June 17, 2021
Filed: July 20, 2021
_____

Before GRUENDER, BENTON, and STRAS, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Justin Stufflebean died after he allegedly was denied necessary medication while incarcerated. His parents brought this action against numerous defendants purportedly responsible for Stufflebean's medical care, including Buchanan County (the "County"). They alleged that the County was liable for, *inter alia*, wrongful death under Missouri law.

The County moved to dismiss this claim, arguing that it had sovereign immunity.[1] *See* Mo. Rev. Stat. § 537.600. The district court[2] denied this motion, concluding that the County had waived sovereign immunity by purchasing liability insurance that covered the wrongful-death claim. *See* § 537.610(1). The County asked the district court to reconsider its decision, but the district court denied its request. The County appeals, and we have appellate jurisdiction over these interlocutory orders under the collateral-order doctrine. *See Argonaut Great Cent. Ins. Co. v. Audrain Cty. Joint Commc'ns*, 781 F.3d 925, 930 (8th Cir. 2015). For the following reasons, we affirm.

We "review *de novo* the district court's interpretation of state law." *Roemmich v. Eagle Eye Dev., LLC*, 526 F.3d 343, 348 (8th Cir. 2008).[3] In

---

[1]Because the statute and the parties refer to this statutorily provided immunity as "sovereign immunity," we do too. But to be clear, what we are discussing is not the immunity inherent to sovereigns that we usually discuss in the Eleventh Amendment context. *See N. Ins. Co. v. Chatham Cty.*, 547 U.S. 189, 193 (2006) ("[T]his Court has repeatedly refused to extend sovereign immunity to counties.").

[2]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

[3]Strangely, both parties argue that we should defer to the district court's interpretation of state law. Although this used to be our practice, after the Supreme Court's decision in *Salve Regina College v. Russell*, 499 U.S. 225 (1991), "we are no longer permitted to defer and must [instead conduct] de novo review." *Ballard v. Nw. Nat'l Life Ins. Co.*, 931 F.2d 513, 516 (8th Cir. 1991).

interpreting Missouri law, "we are bound by the decisions of the Supreme Court of Missouri." *Washington v. Countrywide Home Loans, Inc.*, 747 F.3d 955, 957-58 (8th Cir. 2014). Where, as here, "the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *See id.* at 958.

Generally, Missouri law immunizes political subdivisions from state-law tort claims. *See Div. of Emp. Sec. v. Bd. of Police Comm'rs*, 864 F.3d 974, 981 (8th Cir. 2017); § 537.600. But a political subdivision "may purchase liability insurance for tort claims, made against the state or the political subdivision," thereby waiving the entity's sovereign immunity for claims covered by such insurance. § 537.610(1).

Here, the County entered into an inmate-health-services contract with Advanced Correctional Healthcare, Inc. ("ACH"). In the contract, the County agreed to pay ACH approximately $300,000 per year. In exchange, ACH agreed to provide various services, including to "procure and maintain" various liability insurance policies and "to name . . . the COUNTY as an additional insured." Accordingly, ACH obtained liability insurance from Arch Insurance Group and named the County as an additional insured. The County does not contest that this insurance covers the wrongful-death claim at issue here. Thus, this case presents a narrow question of statutory interpretation: Did the County's indirect acquisition of liability insurance constitute a "purchase" under section 537.610(1)?

"The primary goal of statutory interpretation is to give effect to legislative intent, which is most clearly evidenced by the plain text of the statute." *State ex rel. Goldsworthy v. Kanatzar*, 543 S.W.3d 582, 585 (Mo. 2018). Here, the statute does not define the term "purchase," so we give the term its "plain and ordinary meaning as found in the dictionary." *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 723 (Mo. 2017). "Purchase" means "to obtain (as merchandise) by paying money or its equivalent." *Webster's Third New International Dictionary* 1844 (2002); *see also Becker Elec. Co. v. Dir. of Revenue*, 749 S.W.2d 403, 406

(Mo. 1988) (explaining in a different context that the word "purchaser" usually "refers to a vendee or buyer who has purchased property for a valuable consideration").[4] And that is what happened here—the County paid ACH approximately $300,000 per year and obtained, among other things, liability insurance.

True, it seems the County did not purchase liability insurance directly from an insurance provider. But the statute does not require that a public entity *directly* purchase liability insurance for tort claims. Nor does it require that a public entity purchase liability insurance for tort claims *from an insurance provider*. Rather, the statute states only that a public entity waives sovereign immunity if it "purchase[s] liability insurance for tort claims." § 537.610(1).

As the dissent notes, because section 537.610(1) is a provision waiving sovereign immunity, we must strictly construe it. *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 880 (Mo. 1993). But while this principle may require us to put a thumb on the scale against waiver it does not permit us to rewrite the statute. *See Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 792 n.6 (Mo. 2016) (noting that, whether a statute is "liberally or strictly construed," courts "cannot add words to a statute under the auspice of statutory construction"). Even though we give section 537.610(1) a strict construction, what the County did here "fall[s] fairly within [the] letter" of the statute as a "purchase." *See Allcorn v. Tap Enters., Inc.*, 277 S.W.3d 823, 828 (Mo. Ct. App. 2009); *cf. Schneider ex rel. Schneider v. State, Div. of Water Safety*, 748 S.W.2d 677, 678 (Mo. 1988) (unanimously rejecting the argument that section 537.600.1(1) should be strictly construed to exclude motor

---

[4]Accompanying definitions of "purchase" include "to get into one's possession," "to obtain (something desired) by an outlay (as of labor, danger, sacrifice)," and "to constitute the means or medium for buying (something)." *Webster's Third* at 1844. These "shades of meaning" show the plain and ordinary meaning of "purchase" and support a finding of waiver here, contrary interpretive canons notwithstanding. *See Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. 1995).

-4-

boats from "motor vehicles or motorized vehicles," instead relying on the dictionary definition of "vehicle").

The Missouri Court of Appeals' decision in *Fugate v. Jackson Hewitt, Inc.*, 347 S.W.3d 81 (Mo. Ct. App. 2011), supports our reading. There, in a different statutory context, the court explained that "[t]he plain and ordinary meaning of 'purchase' is to obtain (as merchandise) by paying money or its equivalent: buy for a price." *Id.* at 86. It then held that the term "purchase" does not "require[] that the payment from the buyer to the [seller] be a direct payment." *Id.* So too here, the County's purchase, while perhaps indirect, is a purchase nonetheless.

Our conclusion also comports with the statute's purpose. *See generally State v. Hobokin*, 768 S.W.2d 76, 77 (Mo. 1989) ("The rule of strict construction does not require that the court ignore either common sense or evident statutory purpose."). The Missouri Supreme Court has explained that, in enacting section 537.610(1), "the legislature intended to balance the need for protection of governmental funds against a desire to allow redress for claimants injured." *Winston v. Reorganized Sch. Dist. R-2, Lawrence Cty., Miller*, 636 S.W.2d 324, 328 (Mo. 1982); *see also Richardson*, 863 S.W.2d at 880 (noting that the strict-construction canon in sovereign immunity cases "implements the goals of limiting the government's financial exposure while granting victims some compensation"). This purpose is agnostic as to *how* an entity acquires insurance. What matters is *that* an entity acquires insurance. Further dispelling the notion that there is anything talismanic about how the entity obtains insurance is the fact that a public entity also waives sovereign immunity if it self-insures, which does not involve any purchase at all. *See* § 537.610(1); *cf. id.* § 537.705(1) (stating that a public entity also waives immunity by participating in the Missouri Public Entity Risk Management Fund).

In arguing to the contrary, the County relies on the Missouri Court of Appeals' decision in *Gregg v. City of Kansas City*, 272 S.W.3d 353 (Mo. Ct. App. 2008). But, if anything, *Gregg* actually supports our reading of section 537.610(1). There, the plaintiffs brought a wrongful-death action against the Kansas City Board of Police

Commissioners, alleging it negligently licensed an airport security officer. *Gregg*, 272 S.W.3d at 356, 362. Regulations required the security company that employed the officer to purchase liability insurance and name the Board as an additional insured. *Id.* at 362-63. Although it seems no such insurance was ever purchased, the plaintiffs argued that these regulations still amounted to a *de facto* waiver of the Board's sovereign immunity. *Id.* The Missouri Court of Appeals rejected this argument, concluding that the Board had not purchased insurance for two reasons:

> Plaintiffs make no showing that the Board was instrumental in causing the regulations to be issued for the Board's protection such that the regulations can be said to constitute a waiver by the Board. And even if Plaintiffs had made such a showing, we could not ignore the undisputed fact that the Board in this instance did not require [a third party] to purchase liability insurance protecting the Board.

*Id.* (emphasis omitted). This language suggests that, had the Board caused another entity to purchase liability insurance on its behalf, that would have constituted a "purchase" waiving sovereign immunity under section 537.610(1). So too here.

In sum, section 537.610(1)'s plain text, bolstered by the statute's purpose and Missouri caselaw, shows that the County's acquisition of liability insurance in this case constitutes a waiver of its sovereign immunity. Accordingly, we affirm the district court's denials of the County's motion to dismiss and of the County's related motion for reconsideration.

STRAS, Circuit Judge, dissenting.

Buchanan County hired Advanced Correctional Healthcare, Inc. to provide health-care services to inmates at a local jail. One of the many conditions in the approximately $300,000 contract between the parties was that, once the company acquired liability insurance, it had to add the County as an insured. The question in this case is whether, through this arrangement, *the County* "purchase[d]" the insurance, which under Missouri law would mean that it has waived its sovereign

-6-

immunity. Mo. Rev. Stat. § 537.610.1 (providing that "[s]overeign immunity . . . is waived" when "the governing body of [a] political subdivision of this state . . . purchase[s] liability insurance for tort claims"); *see Brentwood Glass Co. v. Pal's Glass Serv., Inc.*, 499 S.W.3d 296, 305 (Mo. banc 2016) (per curiam) (explaining that Missouri counties possess a state-law version of sovereign immunity). There is more than one reasonable answer to that question, and under Missouri's strict-construction canon, we must adopt the one that preserves immunity. *See Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 880 (Mo. banc 1993).

One reasonable answer is that even an "indirect acquisition of liability insurance," *ante* at 3, is a "purchase," Mo. Rev. Stat. § 537.610.1. The word "purchase" means "to obtain (as merchandise) by paying money or its equivalent: buy for a price." *Webster's Third New International Dictionary* 1844 (2002). In the court's view, "that is what happened here," *ante* at 4, because the County "obtain[ed]" insurance "by paying money" to Advanced Correctional Healthcare, which in turn had to get insurance to fulfill its end of the bargain, *Webster's Third*, *supra*, at 1844. I have no doubt that this is one reasonable way to read the words "the governing body of each political subdivision of this state . . . may purchase liability insurance for tort claims." Mo. Rev. Stat. § 537.610.1.

But it is not the only way. If "purchas[ing]" something requires "buy[ing]" it "for a price," then the County arguably needed to be the one doing the buying. *Webster's Third*, *supra*, at 1844. After all, the statute uses an active verb, "purchase," to describe what a specific entity, "the governing body of [a] political subdivision," may do. Mo. Rev. Stat. § 537.610.1. So under this interpretation, a "purchase" of liability insurance by a third party, even one that is contractually obligated to get it, does not waive sovereign immunity.

An everyday example illustrates the point. *See Kehlenbrink v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. banc 2019) (interpreting statutory language according to its "ordinary meaning"). Suppose a contractor hires a subcontractor to complete the plumbing work on a building. As part of the contract, the subcontractor

is required to get a certain number of faucets, valves, and other parts. In such a scenario, if the subcontractor is the one buying them directly from a wholesaler, presumably out of the flat fee paid by the contractor for completion of the work, would it be reasonable to say that the subcontractor, rather than the contractor, "purchase[d]" the parts? Mo. Rev. Stat. § 537.610.1. In my view, the answer is yes, because it was the *subcontractor* who took all the steps necessary to make the "purchase," like choosing the vendor, selecting the parts, negotiating the terms, and paying the invoice. *Id.* The same is true here.

With the statute's "meaning" unclear in these circumstances, *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 3 (Mo. banc 2012) (quotation marks omitted), Missouri's strict-construction canon comes to the rescue. *See Richardson*, 863 S.W.2d at 880 ("[S]tatutory provisions waiving sovereign immunity must be strictly construed."); *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 792 n.6 (Mo. banc 2016) (explaining that the "rule[] of . . . strict construction" applies "only when a statute is ambiguous"); *cf. Schneider ex rel. Schneider v. State, Div. of Water Safety*, 748 S.W.2d 677, 678 (Mo. banc 1988) (concluding that the strict-construction canon was inapplicable because the immunity-waiving statute unambiguously applied). Faced with two reasonable interpretations, we are required to pick the immunity-preserving one, *see Richardson*, 863 S.W.2d at 880, which in this case is that Buchanan County did not "purchase" the insurance, Advanced Correctional Healthcare did. Mo. Rev. Stat. § 537.610.1.

With no purchase by the County, there is no waiver. And with no waiver, the district court should have dismissed the County from the lawsuit. For these reasons, I respectfully dissent.

_____