# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1450
_____

Altovese Williams, Individually, and as Administrator of the Estate of Marquis Jones, and, by next friend B.B.D, by next friend M.R.J., Jr., by next friend D.K.J., by next friend M.R.J., III, by next friend M.R.H.

*Plaintiff - Appellee*

v.

City of Burlington, Iowa; Chris Chiprez

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: November 16, 2021
Filed: March 9, 2022
_____

Before BENTON, KELLY, and ERICKSON, Circuit Judges.
_____

BENTON, Circuit Judge.

Marquis Jones ran away from a traffic stop. Fleeing, he dropped a gun. Burlington Police officer Christopher Chiprez shot and killed him. Jones's estate

sued under state and federal law. The district court[1] denied qualified immunity to Chiprez, based on two genuine disputes of material fact for the jury: "(1) whether Officer Chiprez saw Jones drop the gun when he ordered him to; and (2) whether Officer Chiprez was unreasonable in believing Jones was taking a firing position rather than surrendering." Chiprez appeals the denial of qualified immunity. This court affirms.

Officers Chris Chiprez and Joshua Riffel stopped Marquis Jones on the afternoon of October 1, 2017 for playing music too loudly while driving in a residential neighborhood. Jones got out of his car and ran from the traffic stop; Chiprez pursued on foot. Riffel intercepted Jones with the patrol car. Riffel got out, tackling him in the street. He saw Jones had a handgun—the parties dispute whether it was in his hand or fell out of his waistband. Riffel shoved Jones away shouting, "He's got a gun, Chip!" Chiprez, arriving on foot, saw Riffel retreating.

Jones continued running, up a hill, away from the officers. Chiprez yelled "Drop it!" Seconds later, he fired seven shots, missing Jones. From here, the officers and the estate tell two versions of events. It is undisputed that, near where Chiprez ordered him to drop the gun, Jones dropped it. Jones ran through the gate to a fenced-in yard. He got down on the ground. Chiprez approached the yard, yelled "stop," and shot Jones in the chest, killing him.

Jones's estate, on behalf of his five minor children, assert three remaining claims against the City of Burlington and officer Chiprez. They assert federal and state constitutional violations of excessive use of force and arrest without probable cause. Under Iowa state law they assert loss of consortium. Both sides moved for partial summary judgment.

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

The estate argues that this court lacks jurisdiction of this interlocutory appeal. Not every denial of summary judgment in a qualified immunity case is immediately appealable. ***Johnson v. Jones***, 515 U.S. 304, 313-18 (1995). If the only issue is sufficiency of the evidence, this court lacks jurisdiction. *See **Henderson v. Munn***, 439 F.3d 497, 500-01 (8th Cir. 2006); ***Mitchell v. Forsyth***, 472 U.S. 511, 530 (1985).

But when there is an issue of law, including whether the federal right allegedly infringed was "clearly established," a summary judgment determination is appealable. ***Johnson***, 515 U.S. at 317. *See also **Brown v. Fortner***, 518 F.3d 552, 557 (8th Cir. 2008). Since Chiprez raises the issue whether he had fair warning about the unconstitutionality of his alleged actions, this court has jurisdiction to review the denial of summary judgment.

This court reviews *de novo* the district court's denial of summary judgment based on a lack of qualified immunity. ***New v. Denver***, 787 F.3d 895, 899 (8th Cir. 2015).

The doctrine of qualified immunity protects public officials from personal liability under 42 U.S.C. § 1983, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Pearson v. Callahan***, 555 U.S. 223, 231 (2009), *citing **Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982). This court addresses two questions in analyzing qualified immunity: 1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and 2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." ***Pearson***, 555 U.S. at 232, *citing **Saucier v. Katz***, 533 U.S. 194, 201 (2001) (other citations omitted).

I.

The estate alleges a violation of the Fourth Amendment. An objectively unreasonable use of force is excessive, violating the Fourth Amendment's

prohibition against unreasonable seizures. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 394-96 (1989). The estate alleges that Chiprez knew or should have known that Jones was unarmed, so his use of deadly force was excessive.

Chiprez repeatedly urges this court to disregard as "pure speculation and conjecture" the facts presented by the estate. *See Solomon v. Petray*, 795 F.3d 777, 788 (8th Cir. 2015). As the Supreme Court has emphasized, when analyzing a claim of qualified immunity, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Rather, this court "must construe the facts in the light most favorable to [the nonmovant] to determine whether a constitutional violation occurred and whether any violation of a constitutional right was clearly established." *K.W.P. v. Kansas City Public Schools*, 931 F.3d 813, 821 (8th Cir. 2019). This court may not make determinations of fact and credibility in assessing whether a party is entitled to qualified immunity. *Ludwig v. Anderson*, 54 F.3d 465, 473 (8th Cir. 1995).

"The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation." *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012). Qualified immunity protects "reasonable mistakes" of fact. *Saucier*, 533 U.S. at 206. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Chiprez alleges he mistakenly believed Jones was still armed when he shot and killed him, and reasonably believed he was in a "firing position." In support, he cites the Iowa Attorney General's investigation into this use of deadly force. But the estate presented competing evidence to the district court—autopsy results, body-camera footage, and inconsistent police reports of the incident—to support the claim that Chiprez saw Jones drop the gun, and that he could not reasonably have believed

Jones was in a shooting position. That evidence is more than speculation or conjecture. In one frame of the body-camera footage, Chiprez appears to look directly at the items dropped by Jones—including the gun—while running after him. The autopsy results and re-creations of the scene support that Jones was nearly prone on the ground when he was fatally shot, rather than in the upright "firing position" Chiprez describes. These facts and evidence presented by the estate would support a determination that a constitutional violation occurred.

The district court properly relied on *Wealot v. Brooks*, 865 F.3d 1119, 1122-23 (8th Cir. 2017). Police officers there, responding to a domestic call, saw a man fire shots at people in a nearby vehicle and run away, dropping the gun as he ran. *Id.* at 1123. One officer caught up to him, shooting him eight times when he began to turn around. *Id.* This court reversed the grant of summary judgment, finding two genuine disputes of material fact: whether the officers saw the man throw his gun and thus knew he was unarmed, and whether he was turning around with his hands raised to surrender. *Id.* at 1125. The same outcome is warranted here.

## II.

"For a constitutional right to be clearly established, there does not have to be a previous case with exactly the same factual issues." **Nance v. Sammis**, 586 F.3d 604, 611 (8th Cir. 2009), *citing* **Hope v. Pelzer**, 536 U.S. 730, 739 (2002). But the right should not be defined at "a high level of generality." **White v. Pauly**, 137 S. Ct. 548, 552 (2017). "Hence, the issue is not whether prior cases present facts substantially similar to the present case but whether prior cases would have put a reasonable officer on notice that the use of deadly force in these circumstances would violate [the] right not to be seized by the use of excessive force." **Craighead v. Lee**, 399 F.3d 954, 962 (8th Cir. 2005).

"Since 1985, it has been established by the Supreme Court that the use of deadly force against a fleeing suspect who does not pose a significant threat of death or serious physical injury to the officers or others is not permitted." **Moore v.**

*Indehar*, 514 F.3d 756, 763 (8th Cir. 2008), *citing **Tennessee v. Garner***, 471 U.S. 1, 11 (1985). The right established in *Garner* is sufficiently clear. *See e.g.*, ***Capps v. Olson***, 780 F.3d 879, 886 (8th Cir. 2015) ("[A] reasonable officer would have understood that use of deadly force against a fleeing suspect who does not pose a significant and immediate threat of serious injury or death to an officer or others is not permitted."); ***Nance***, 586 F.3d at 610; ***Moore***, 514 F.3d at 763 (determining that a jury could find an officer's decision to use deadly force against an unarmed person fleeing the scene of a shooting objectively unreasonable); ***Wallace v. City of Alexander***, 843 F.3d 763, 769 (8th Cir. 2016) ("[A]n officer violate[s] *Garner* by using deadly force to seize an individual who did not possess a weapon and was attempting to flee the scene of a potentially violent crime."); ***Craighead***, 399 F.3d at 962 ("At least since *Garner* was decided ... officers have been on notice that they may not use deadly force unless the suspect poses a significant threat of death or serious physical injury to the officer or others.").

Chiprez emphasizes his (alleged) belief that Jones was still armed. He does not claim that he was ignorant of the constitutional prohibition against the use of deadly force against an unarmed, non-dangerous suspect. The officers had no reason except the gun to believe Jones was dangerous; the traffic stop was initiated for a noise ordinance. If, construing the evidence most favorably to the estate, Chiprez knew Jones was unarmed, then shooting him violated a clearly established constitutional right.

III.

Chiprez argues that an admission by the estate during discovery negates its entire case. Replying to a request for admissions, the estate responded that Chiprez had a reasonable belief that Jones had a gun when Chiprez used deadly force. The estate supplemented its response to state it referred only to Chiprez's "first" use of deadly force—the missed shots—not the fatal shot. Regardless, the response is not the only evidence about whether Jones had a gun when fatally shot. Under *Tolan*,

this court will not construe the response against the estate, as this argument would require. *See **Tolan***, 572 U.S. at 655.

Chiprez also asserts that opinions by the autopsy doctor should not be considered by this court (just as the district court did not consider them). Because this issue was not the subject of an appealable order, this court will not consider it. *See, e.g.*, ***Cohen v. Beneficial Indus. Loan Corp.***, 337 U.S. 541, 545 (1949).

\* \* \* \* \* \* \*

The order denying qualified immunity is affirmed.

_____