# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 21-1761

_____

Gina Torres; Dennis Torres

*Plaintiffs - Appellees*

v.

City of St. Louis

*Defendant*

Lance Coats; Glennon P. Frigerio; Joshua D. Becherer; Nicholas Manasco; Ronald Allen, Jr.; John C. Jones; Mark S. Seper; Jon B. Long; Tim Boyce; Benjamin R. Lacy

*Defendants - Appellants*

_____

## No. 21-1918

_____

Gina Torres; Dennis Torres

*Plaintiffs - Appellees*

v.

City of St. Louis

*Defendant - Appellant*

Lance Coats; Glennon P. Frigerio; Joshua D. Becherer; Nicholas Manasco; Ronald Allen, Jr.; John C. Jones; Mark S. Seper; Jon B. Long; Tim Boyce; Benjamin R. Lacy

*Defendant*s

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 13, 2022
Filed: July 1, 2022
_____

Before BENTON, SHEPHERD, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Isaiah Hammett was killed during the St. Louis Metropolitan Police Department's (SLMPD) execution of a search warrant at his grandfather's home. As relevant to this appeal, appellees Gina Torres (Gina) and Dennis Torres (Dennis),[1] Hammett's surviving mother and grandfather, respectively, brought Fourth Amendment excessive force and unlawful seizure claims under 42 U.S.C. § 1983, conspiracy claims under 42 U.S.C. §§ 1983 and 1985, and state law wrongful death and infliction of emotional distress claims against the City of St. Louis and SLMPD Officers Lance Coats, Glennon P. Frigerio, Joshua D. Becherer, Nicholas Manasco, Ronald Allen, Jr., John C. Jones, Mark S. Seper, Jon B. Long, Tim Boyce, and Benjamin R. Lacy (collectively, the defendant officers). The district court denied the City and defendant officers' (together, appellants) motion for summary judgment on these claims, and appellants filed the present appeal. To the extent that appellants assert arguments beyond the scope of our jurisdiction, we dismiss their appeal. On the few arguments that remain, having jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine, we reverse and remand.

---

[1]We refer to Gina and Dennis Torres by their first names to differentiate between them, not to imply any familiarity or informality.

On June 7, 2017, an SLMPD SWAT team executed a search warrant for Dennis's home, which authorized officers to seize "Marijuana, Heroin, or any other Illegal Narcotic, U.S. Currency, Drug Transaction Records, Firearms, and any other instrument of the crime." At the time the SLMPD officers executed the search warrant, Dennis and Hammett were the only two individuals inside the home. Officer Boyce used a "battering ram" to breach the front door of the home, and officers detonated a noise diversion device commonly known as a "flash bang." SLMPD officers then entered the home and discharged their weapons a collective 93 times, shooting Hammett 24 times and killing him. At some point during the incident, Dennis called 911 and stated that someone was shooting into his home and that he did not see anyone. Police photographs taken after the incident show an AK-47 type assault rifle next to Hammett's body.

The parties presented vastly different accounts of the remaining details of this incident to the district court. Appellants alleged that, as officers entered Dennis's home, gunfire came through the bedroom door and wall in the officers' direction and Officers Long, Manasco, Coats, Frigerio, Allen, and Jones returned fire into the bedroom door and wall. They claim that Hammett then entered the dining room armed with an AK-47 pointed in the officers' direction and, fearing for their lives, Officers Long, Manasco, Coats, Becherer, and Seper fired at Hammett. Appellants note that nine 7.62x39mm cartridge cases were seized after the incident, which laboratory tests confirmed were fired from the AK-47 found next to Hammett's body.

Appellees claimed that ballistic evidence, audio recordings, and eyewitness and expert testimony directly contradict appellants' claims that Hammett fired the AK-47 and was carrying it when he was shot.[2] They rely on Dennis's deposition

---

[2] Because this interlocutory appeal comes to us on a denial of immunity, "we must accept the summary judgment facts as described by the district court because evidentiary determinations are not presently appealable," though "we are . . . not

testimony, in which he stated that he was asleep in his bedroom when he was awakened by the sound of gunfire. Dennis testified that Hammett came into his bedroom, picked him up, and placed him on the floor before going into the dining room. He claimed that Hammett did not have anything in his hands when he went into the dining room and that he did not see a gun next to Hammett's body when he later crawled into his wheelchair and went into the dining room. Dennis further testified that he did not hear an AK-47 fire during the incident and would have noticed the sound because he had heard it "thousands" of times during his military service in Vietnam. In addition to Dennis's deposition testimony, appellees relied on the affidavit and expert deposition testimony of L. Samuel Andrews, who, as noted by the district court,

> trained the [SLMPD] SWAT team on numerous occasions, conducted an extensive inspection of the ballistic evidence at the premises and found no bullet hole in the home that match[ed] a 7.62 caliber gun and did not find any evidence of damage to the front living room wall which would have been there if the AK-47 rounds were fired through the bedroom wall and door as claimed by the officers.

R. Doc. 175, at 16.

---

bound by facts found by the district court which are 'blatantly contradicted by the record.'" Johnson v. City of Minneapolis, 901 F.3d 963, 965 & n.2 (8th Cir. 2018) (citations omitted); see also N.S. ex rel. Lee v. Kan. City Bd. of Police Comm'rs, No. 20-1526, 2022 WL 1739233, at *1 (8th Cir. May 31, 2022) ("In the immunity context, [the summary judgment] standard requires us to evaluate the evidence using the plaintiff-friendly version of the facts identified by the district court."). Where the district court does "not state which facts it found were adequately supported, we must determine which facts it likely assumed by viewing the record in the light most favorable to the plaintiff." Thompson v. Murray, 800 F.3d 979, 983 (8th Cir. 2015). Here, the district court detailed the allegations made by appellees in their amended complaint but did not clearly state which of those allegations it found were adequately supported for purposes of summary judgment. Thus, relying on the district court's analysis in the portion of its order considering appellants' motion for summary judgment and viewing the record in the light most favorable to the appellees, we determine that the following facts were most likely assumed by the district court. See id.

-4-

Further, in response to appellants' claim that the defendant officers did not use force against Dennis, appellees directed the district court to Dennis's deposition testimony claiming that officers "opened fire" on him when he called out Hammett's name. Specifically, Dennis stated that while he was on the floor in his bedroom and after he "heard a thump" and saw that Hammett had fallen to the floor in the dining room, he called out Hammett's name and two shots went off right by his head, which would have hit him had he gotten up. Once the shooting stopped, Dennis crawled into his wheelchair and went into the dining room, where he saw Hammett's body. Dennis stated that he then complied with the officers' command to come out with his hands up.

Based on their version of the foregoing facts, appellees asserted eight claims against the City and defendant officers, bringing Counts 1-4 of their amended complaint in Gina's name and Counts 5-8 in Dennis's name. Count 1 asserts a § 1983 claim for use of excessive force in violation of the Fourth Amendment against the defendant officers, and Count 5 asserts the same in addition to a § 1983 claim for unreasonable seizure in violation of the Fourth Amendment against the defendant officers. Counts 2 and 6 assert §§ 1983 and 1985 conspiracy claims against the defendant officers. Counts 3 and 7 assert Monell[3] claims against the City. Finally, Counts 4 and 8 assert state law wrongful death and infliction of emotional distress claims against the defendant officers and the City. Appellants filed a motion for summary judgment, claiming that the defendant officers were entitled to qualified immunity on Counts 1, 2, 5, and 6 and that the City and defendant officers were entitled to sovereign immunity and official immunity, respectively, on Counts 4 and 8. As to Counts 3 and 7, appellants argued that the City was entitled to summary judgment because there was no genuine dispute of material fact as to whether the City had a policy, practice, or custom that caused a constitutional violation. Subsequently, appellants filed a Daubert[4] motion, requesting that the district court strike Andrews' affidavit and bar him from

---

[3]Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

[4]Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

testifying at trial, and appellees filed a motion to defer or deny appellants' Daubert motion without prejudice until the close of expert discovery (collectively, the Andrews motions).

As relevant here, the district court considered appellants' motion for summary judgment and the Andrews motions in its March 25, 2021, order. The district court denied in part and granted in part appellants' motion for summary judgment. As to the defendant officers, the district court denied the motion, holding that the defendant officers were not entitled to qualified immunity on the constitutional claims asserted in Counts 1, 2, 5, and 6 or official immunity on the state law claims asserted in Counts 4 and 8. As to the City, the district court granted the motion as to appellees' Monell claims asserted in Counts 3 and 7, but it denied the motion as to the state law claims asserted in Counts 4 and 8, holding that the City was not entitled to sovereign immunity. The district court considered Andrews' affidavit and deposition testimony in ruling on appellants' motion for summary judgment, but did not rule on the Andrews motions, instead setting a hearing to review the matter. Following appellants' interlocutory appeal to this Court, the district court denied appellees' motion to defer or deny appellants' motion to exclude Andrews' testimony, with directions to refile following this Court's ruling. Before briefing before this Court commenced, appellees filed a motion to dismiss appellants' interlocutory appeal for lack of jurisdiction because the district court's order denying summary judgment was based on disputed questions of fact.

II.

We begin by addressing our jurisdiction to review the district court's order denying appellants qualified immunity, official immunity, and sovereign immunity. See Murray, 800 F.3d at 982 ("The 'first and fundamental question' in an appeal from a denial of qualified immunity is that of jurisdiction." (citation omitted)). First, as to review of a qualified immunity determination on an interlocutory appeal, "our jurisdiction is limited to the purely legal question of whether the conduct that the district court found was adequately supported in the record violated a clearly

-6-

established federal right." Taylor v. St. Louis Cmty. Coll., 2 F.4th 1124, 1126-27 (8th Cir. 2021); see also Jones v. McNeese, 675 F.3d 1158, 1160-61 (8th Cir. 2012) ("A defendant may appeal an order denying summary judgment based on qualified immunity only 'to the extent that it turns on an issue of law.'" (citation omitted)). Thus, while "we 'cannot review whether a factual dispute is genuine,' . . . we 'may review the purely legal question [of] whether a factual dispute is material.'" Just v. City of St. Louis, 7 F.4th 761, 765-66 (8th Cir. 2021) (citation omitted). In other words, "we lack jurisdiction to consider an argument that the plaintiff has proffered insufficient evidence to create a genuine issue of fact, [but] we have jurisdiction to consider an argument that the disputed facts to which the plaintiff cites are unable to affect the outcome of the suit." Id. at 766 (citations omitted). Second, as to official immunity, this Court similarly has "limited jurisdiction to review issues of law related to the district court's denial of summary judgment based on [the defendant officers'] official immunity defense." Thompson v. Dill, 930 F.3d 1008, 1013 (8th Cir. 2019). Finally, as to sovereign immunity, "the key to our jurisdiction over an interlocutory appeal addressing sovereign immunity is whether the immunity is an 'immunity from suit rather than a mere defense to liability.'" Argonaut Great Cent. Ins. Co. v. Audrain Cnty. Joint Commc'ns, 781 F.3d 925, 929 (8th Cir. 2015) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Because Missouri's sovereign immunity statute "generally preserves Missouri's 'sovereign or governmental tort immunity as existed at common law'" and "specifically refers to 'the immunity of [a] public entity from liability and suit,'" we have jurisdiction in this interlocutory appeal over whether the City is entitled to sovereign immunity. See id. at 930 (quoting Mo. Rev. Stat. § 537.600). Having mapped the boundaries of our jurisdiction, we now turn to appellants' arguments.

A.

Appellants first argue that the district court erred in finding that the defendant officers were not entitled to qualified immunity on appellees' Fourth Amendment excessive force claims asserted in Counts 1 and 5. We review the district court's denial of summary judgment on the basis of qualified immunity de novo. Williams

v. City of Burlington, 27 F.4th 1346, 1350 (8th Cir. 2022). "Qualified immunity is a shield from civil liability for officers whose conduct 'does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."'" Just, 7 F.4th at 766 (citation omitted). To determine whether officers are entitled to qualified immunity, courts follow the familiar two-step inquiry, asking: "1) 'whether the facts that a plaintiff has alleged [. . .] or shown [. . .] make out a violation of a constitutional right' and 2) 'whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.'" Williams, 27 F.4th at 1350 (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). "The court may consider these steps in any order, but '[u]nless the answer to both of these questions is yes, the defendants are entitled to qualified immunity.'" Ehlers v. City of Rapid City, 846 F.3d 1002, 1008 (8th Cir. 2017) (citations omitted).

Because appellants' arguments in support of their assertion that the district court erred in denying the defendant officers qualified immunity primarily concern the issue of whether the defendant officers used excessive force, we begin with the first step. "To determine whether [the defendant officers] used excessive force in violation of the Fourth Amendment, we 'ask[ ] "whether the amount of force used was objectively reasonable under the particular circumstances."'" Banks v. Hawkins, 999 F.3d 521, 525 (8th Cir. 2021) (second alteration in original) (citation omitted). "The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation." Williams, 27 F.4th at 1351 (citation omitted). "'[A]bsent probable cause' for an officer to believe that the suspect poses 'an immediate threat of death or serious bodily injury' to others, 'use of deadly force is not objectively reasonable.'" Cole ex rel. Est. of Richards v. Hutchins, 959 F.3d 1127, 1132 (8th Cir. 2020) (citation omitted).

In support of their assertion that the district court erred in denying Officers Long, Manasco, Becherer, Seper, Coats, Frigerio, Allen, and Jones qualified immunity, appellants first argue that neither Andrews' opinions nor Dennis's testimony controverts the fact that Hammett was armed when he was shot and, thus,

-8-

do not create a genuine dispute of material fact.[5] Appellants further argue that Andrews' opinions are inadmissible and, therefore, the district court erred by relying on them in concluding that appellees' excessive force claims were subject to a genuine dispute of material fact. "We lack jurisdiction to review the denial of qualified immunity 'if at the heart of the argument is a dispute of fact.'" Taylor, 2 F.4th at 1127 (citation omitted). "[D]efendants that have been denied qualified immunity cannot create appellate jurisdiction by using qualified immunity verbiage to cloak factual disputes as a legal issue." Berry v. Doss, 900 F.3d 1017, 1021 (8th Cir. 2018). Regardless of how defendants shape their argument, "we are obligated to look beyond their characterization of the issue to 'determine whether [they are] simply arguing that the plaintiff[s] offered insufficient evidence to create a material issue of fact.'" Id. (first alteration in original) (citation omitted). Here, appellants' argument is essentially one of sufficiency of the evidence, and determining whether Andrews' opinions and Dennis's testimony create a genuine issue of fact is something we lack jurisdiction to do. See, e.g., Riggs v. Gibbs, 923 F.3d 518, 523 (8th Cir. 2019) (concluding that this Court lacked jurisdiction to consider argument that plaintiff had put forth insufficient evidence disputing material fact); Austin v. Long, 779 F.3d 522, 524 (8th Cir. 2015) (same).

Further, we need not reach the issue of whether Andrews' opinions are admissible. The district court relied on Dennis's testimony in concluding that a genuine dispute of fact existed as to the issue of whether the defendant officers used excessive force, and his testimony that Hammett was not armed and there was no gun next to his body is material to this issue. See Dill, 930 F.3d at 1013 ("[W]here it is *not* objectively reasonable for an officer to believe a suspect poses an immediate

_____

[5]In their reply brief, appellants argue for the first time that, even if Andrews' testimony is deemed admissible, this Court should nonetheless find that Officers Frigerio, Allen, and Jones are entitled to qualified immunity because their shots were fired only into the wall and door and did not physically touch Hammett. "Absent some reason for failing to raise an argument in an opening brief, this [C]ourt will not consider an argument first raised in a reply brief." United States v. Brown, 108 F.3d 863, 867 (8th Cir. 1997). Because appellants provide no excuse for failing to raise this argument in their opening brief, we do not consider it.

threat to the officer or others, 'deadly force is not justified.'" (citation omitted)). Thus, even if we were to conclude that Andrews' opinions are inadmissible, the outcome of our qualified immunity analysis would be the same.

Appellants next argue that the district court erred in denying Officers Long, Manasco, Becherer, Seper, Coats, Frigerio, Allen, and Jones qualified immunity because each had probable cause to believe that Hammett posed an imminent threat of serious harm. Appellants contend that, considering only admissible evidence, it is undisputed that Hammett fired his AK-47 through the bedroom wall and door and emerged from the bedroom carrying the AK-47 pointed in the officers' direction. This argument is based on facts not assumed by the district court, which gave credit to appellees' version of the facts detailed supra Section I. See Murray, 800 F.3d at 983 ("[W]e are constrained by the version of the facts that the district court assumed or likely assumed in reaching its decision."). Again, this argument is essentially one of sufficiency of the evidence. In order for us to reach appellants' argument that these officers had probable cause, "we would have to exceed our jurisdiction and cast aside the district court's factual findings, analyze the factual record, and resolve genuine factual disputes against the non-moving party. This we cannot do." Taylor, 2 F.4th at 1127. Further, "while we have exercised jurisdiction in qualified immunity cases when the record plainly forecloses the district court's finding of a material factual dispute, we find nothing in this record . . . that clearly contradicts the district court's factual determinations . . . ." Id. (citation omitted).

Appellants finally argue that the district court erred in denying Officers Boyce and Lacy qualified immunity because neither officer employed any force against Hammett or Dennis. "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." White v. Jackson, 865 F.3d 1064, 1081 (8th Cir. 2017). "An officer may be held liable only for his or her own use of excessive force." Grider v. Bowling, 785 F.3d 1248, 1252 (8th Cir. 2015). In its separate analysis of Officers Boyce and Lacy's conduct, the district court noted that Officer Boyce carried the battering ram, breached the front door of Dennis's home, and jumped from the front porch into the alleyway when

gunfire erupted. As to Officer Lacy, the district court found that Officer Lacy was not a member of the SWAT team, did not enter Dennis's home at any point prior to Hammett's death, and did not fire any shots during the execution of the search warrant. Appellees do not contest these findings and concede in their briefing to this Court that Officers Boyce and Lacy did not use any force against Hammett. Therefore, because appellees present no evidence showing Officers Boyce or Lacy's personal involvement in the alleged use of excessive force against Hammett and, thus, fail to create a genuine issue of material fact that either officer violated Hammett's constitutional right to be free from excessive force, we reverse the district court's denial of qualified immunity to Officers Boyce and Lacy as to appellees' Fourth Amendment excessive force claims. See White, 865 F.3d at 1081 (finding that officer was entitled to qualified immunity where plaintiff presented no evidence showing officer's personal involvement in alleged use of excessive force).

Appellants' remaining argument concerns the second step of the qualified immunity analysis: whether Hammett's Fourth Amendment right to be free from excessive force was clearly established in June 2017. "In order to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Ehlers, 846 F.3d at 1008 (alteration in original) (citation omitted). "The inquiry 'must be particularized to the facts of the case' such that 'the state of the law' in [June] 2017 would have given a reasonable officer 'fair warning' that shooting [Hammett] 'was unconstitutional.'" Banks, 999 F.3d at 529 (citations omitted). Appellants argue that the district court erred in denying Officers Long, Manasco, Becherer, Seper, Coats, Frigerio, Allen, and Jones qualified immunity because it was not clearly established in June 2017 that "it is constitutionally unreasonable to use deadly force against a suspect, who during the execution of a search warrant, fires at officers and then approaches officers with a rifle shouldered and at the ready." Appellants' Br. 58. Though appellants present this argument in terms of the clearly established prong of the qualified immunity inquiry, they base their argument on facts not assumed by the district court. See Murray, 800 F.3d at 984. The district court found a genuine factual dispute as to whether Hammett fired the AK-47 and was armed

when he was shot. Whether or not Hammett was armed when the defendant officers used deadly force against him is material to the question of whether it was clearly established that the officers could not use deadly force in this situation. "At bottom, this is an argument about the sufficiency of the evidence, a question we lack jurisdiction to review, however inventively it is structured as an abstract legal argument." Id.

Therefore, based upon the foregoing, as to appellees' claims asserted in Counts 1 and 5 that the defendant officers violated Hammett's Fourth Amendment right to be free from excessive force, we find that we lack jurisdiction to consider appellants' arguments that the district court erred in denying Officers Long, Manasco, Becherer, Seper, Coats, Frigerio, Allen, and Jones qualified immunity and we reverse the denial of qualified immunity to Officers Boyce and Lacy.

B.

In addition to asserting that the defendant officers violated Hammett's right to be free from excessive force, Count 5 asserts that the defendant officers violated Dennis's Fourth Amendment right to be free from unreasonable seizure and excessive force. The district court found a genuine dispute of material fact existed where appellees alleged that, while Dennis was still in the bedroom and after Hammett was already on the floor, officers "opened fire" on Dennis after he called out Hammett's name. Appellants argue that the district court erred in denying the defendant officers qualified immunity on this basis because Dennis was not seized or subjected to force in violation of the Fourth Amendment.

"[A] person is seized within the meaning of the Fourth Amendment 'when the officer, by means of physical force or show of authority, terminates or restrains [the person's] freedom of movement.'" United States v. Warren, 984 F.3d 1301, 1303 (8th Cir. 2021) (quoting Brendlin v. California, 551 U.S. 249, 254 (2007)). "An objectively unreasonable use of force is excessive, violating the Fourth Amendment's prohibition against unreasonable seizures." Williams, 27 F.4th at

1350-51. It is undisputed that Dennis was not shot or otherwise injured at the time that he claims the defendant officers opened fire on him. Thus, there was no application of physical force. See Steed ex rel. Steed v. Mo. State Highway Patrol, 2 F.4th 767, 770 (8th Cir. 2021) (finding that officers did not apply physical force and no seizure occurred where plaintiff did not drive over spike strips deployed by officers); Cole v. Bone, 993 F.2d 1328, 1332 (8th Cir. 1993) (concluding that plaintiff was not seized until he was struck by officer's bullet). Further, there was no acquiescence with a show of authority. See Schulz v. Long, 44 F.3d 643, 647 (8th Cir. 1995) ("[O]ne becomes seized when the officer's show of authority has the effect of stopping his movement."). As he stated during his deposition, Dennis did not know who was shooting at him and after "everything stopped," he got into his wheelchair and went into the living room. It was only at that point that he heard someone tell him to come outside with his hands up and he acquiesced.[6] Thus, even assuming that the shots fired at Dennis were a show of authority, he did not acquiesce to that show of authority and his freedom of movement was not restrained when he remained laying on the floor as he had been before officers opened fire on him and then got into his wheelchair and moved to a different room of the house. Cf. Cole, 993 F.2d at 1333 (finding shots fired at truck were not seizures because they failed to produce a stop). Therefore, because there was no application of physical force or acquiescence to a show of authority, Dennis was not seized for purposes of the Fourth Amendment, and we reverse the district court's denial of qualified immunity to the defendant officers as to Dennis's excessive force and unlawful seizure claims asserted in Count 5.

---

[6]Dennis has not argued that he was seized when he complied with the command to come outside. See Letterman v. Does, 789 F.3d 856, 861 (8th Cir. 2015) ("To survive a challenge based on qualified immunity, a *plaintiff* must show the defendants violated a person's constitutional right and the constitutional right was clearly established at the time of the violation." (emphasis added)).

C.

Appellants next argue that the district court erred in denying the defendant officers qualified immunity on appellees' §§ 1983 and 1985 conspiracy claims (Counts 2 and 6) because these claims are barred by the intracorporate conspiracy doctrine and the law on § 1983 intracorporate conspiracy claims is not clearly established. We begin with appellees' § 1985 claim. "In order to state a claim for conspiracy under § 1985, a plaintiff 'must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.'" Kelly v. City of Omaha, 813 F.3d 1070, 1077 (8th Cir. 2016) (citation omitted). However, under the intracorporate conspiracy doctrine, "'[t]his [C]ourt has held that a corporation and its agents are a single person in the eyes of the law, and a corporation cannot conspire with itself' to violate 42 U.S.C. § 1985." L.L. Nelson Enters. v. Cnty. of St. Louis, 673 F.3d 799, 812 (8th Cir. 2012) (citation omitted). We have extended the intracorporate conspiracy doctrine to § 1985(2) and (3) conspiracy claims, which, *inter alia*, "provide[ ] a cause of action for damages sustained as a result of conspiracies to obstruct justice" and "conspiracies to deprive individuals of equal privileges and immunities and equal protection under the law," respectively, Kelly, 813 F.3d at 1077, finding that "'a local government entity cannot conspire with itself through its agents acting within the scope of their employment,' even if the plaintiff 'alleges improprieties in the execution of these duties,'"[7] Faulk v. City of St. Louis, 30 F.4th 739, 749 (8th Cir. 2022) (citation omitted). Though appellees allege improprieties in the defendant officers' execution of their duties, "this fact alone is insufficient to evade the intracorporate conspiracy doctrine." Kelly, 813 F.3d at 1079. Thus, because the City could not have conspired with itself through

---

[7]Though appellees do not specify which subsection of § 1985 their claims implicate, we find that it is not possible for their claims to fall under § 1985(1), which proscribes, in relevant part, "conspiracies to interfere with the performance of official duties by federal officers" because no federal officers were involved in this incident and, thus, there could be no conspiracy to interfere with their official duties. See Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1429 (8th Cir. 1986).

the defendant officers acting within the scope of their employment, we reverse the district court's denial of qualified immunity on appellees' § 1985 conspiracy claims.

Moving to appellees' § 1983 conspiracy claims, we recently noted that "we have never definitively addressed the issue whether the [intracorporate conspiracy] doctrine applies to § 1983 conspiracy claims." Faulk, 30 F.4th at 749. In Faulk, we concluded that our opinions recognizing § 1983 conspiracy claims against police officers from the same department who conspired to violate clearly established rights do not address the applicability of the intracorporate conspiracy doctrine and, thus, "do not clearly establish that reasonable officers 'would . . . have known with any certainty' that planning, designing, monitoring, or executing 'the illegal kettling plan' would expose them to damage liability for a § 1983 *conspiracy* claim." Id. at 749-50 & n.6 (quoting Ziglar v. Abbasi, 137 S. Ct. 1843, 1869 (2017)). Similarly, here, given the uncertain applicability of the doctrine, these precedents do not clearly establish that reasonable officers would have known that agreeing and planning to violate Hammett's and Dennis's constitutional rights and then taking steps to cover up their use of excessive force would expose them to liability for a § 1983 conspiracy claim. Thus, because it is not clearly established that the intracorporate conspiracy doctrine does not apply to § 1983 conspiracy claims, we reverse the district court's denial of qualified immunity to the defendant officers on Counts 2 and 6.

D.

Appellants next argue that the district court erred in denying the defendant officers official immunity as to the state law wrongful death and infliction of emotional distress claims asserted against them in Counts 4 and 8. We review the district court's denial of summary judgment based on official immunity de novo. Davis v. Buchanan Cnty. (Davis II), 11 F.4th 604, 616 (8th Cir. 2021). As with qualified immunity, "we 'review a summary judgment of official immunity based on facts the district court found adequately supported or likely assumed.'" See Birkeland ex rel. Birkeland v. Jorgensen, 971 F.3d 787, 792 (8th Cir. 2020) (citation omitted). "Missouri applies the doctrine of official immunity to 'protect[ ] public

employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts.'" Letterman, 859 F.3d at 1125 (alteration in original) (citation omitted). "An act is discretionary . . . where 'there is any room whatsoever for variation in when and how a particular task can be done.'" Davis II, 11 F.4th at 629 (citation omitted). "An 'officer's decision to use force in the performance of his duties is discretionary.'" Boude v. City of Raymore, 855 F.3d 930, 935 (8th Cir. 2017) (citation omitted) (applying Missouri law); see also N.S. ex rel. Lee, 2022 WL 1739233, at *3 ("Official immunity shields Missouri police officers from liability for their discretionary decisions, including when they 'draw[ ] and fire[ ] a weapon,' even if they are negligent." (alterations in original) (citation omitted)). "However, acts performed in bad faith or with malice do not qualify as discretionary acts." Dill, 930 F.3d at 1015. Bad faith "requires 'a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive,'" while malice "involves actions that are 'so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or [an] improper or wrongful motive.'" N.S. ex rel. Lee, 2022 WL 1739233, at *3 (alterations in original) (citation omitted). "In Missouri, a bad-faith allegation survives summary judgment if a plaintiff states 'facts from which it could reasonably be inferred that [defendant] acted in bad faith or from an improper or wrongful motive.'" Boude, 855 F.3d at 935 (alteration in original) (citation omitted).

Here, the district court found that appellees had "proffer[ed] evidence and facts sufficient for a reasonable factfinder to find defendants used excessive and unreasonable force or manufactured false evidence in bad faith" and that "the parties' distinctly different accounts create[d] a clear dispute of material fact." Appellants argue that, based upon the admissible evidence, nothing supports appellees' claim that the defendant officers manufactured false evidence and there is no genuine dispute that Hammett was armed at the moment that he was shot and killed. However, relying in part on Dennis's testimony, the district court credited appellees' assertions that Hammett was not carrying the AK-47 and did not fire the AK-47 when he was shot and that the AK-47 was placed next to Hammett's body

post-mortem. As with qualified immunity, our jurisdiction is limited to issues of law, and this argument is, again, essentially one of sufficiency of the evidence. See supra Section II.A.; Dill, 930 F.3d at 1013 (stating that, similar to qualified immunity, "we have limited jurisdiction to review issues of law related to the district court's denial of summary judgment based on [the defendant's] official immunity defense"). Therefore, we lack jurisdiction to address appellants' argument.[8]

E.

Appellants finally argue that the district court erred in denying the City sovereign immunity[9] as to appellees' state law claims asserted under Counts 4 and 8. "Generally, Missouri law immunizes political subdivisions from state-law tort claims." Davis I, 5 F.4th at 909. Still, a political subdivision "may purchase liability insurance for tort claims, made against . . . the political subdivision," thereby

---

[8]We need not address appellants' additional argument that Officer Lacy is separately entitled to official immunity because he had no role in making entry into Dennis's home, used no force against Hammett or Dennis, and did not act in bad faith or with an improper motive in obtaining the search warrant. As to the argument that Officer Lacy is entitled to official immunity because he did not make entry into the residence and used no force, assuming for the sake of argument that appellants are correct, we do not see, and appellants do not explain, how these facts separate Officer Lacy from the district court's finding that appellees proffered sufficient evidence for a reasonable factfinder to find the defendant officers "manufactured false evidence in bad faith." As to the argument that Officer Lacy did not act in bad faith or with an improper motive in obtaining the search warrant, we find that the district court did not address this issue in the context of appellants' motion for summary judgment, and therefore, it is not appropriate for our review. See Daisy Mfg. Co. v. NCR Corp., 29 F.3d 389, 395 (8th Cir. 1994) ("Ordinarily, we do not decide issues that the district court did not adjudicate.").

[9]"Because the statute and the parties refer to this statutorily provided immunity as 'sovereign immunity,' we do too. But to be clear, what we are discussing is not the immunity inherent to sovereigns that we usually discuss in the Eleventh Amendment context." Davis v. Buchanan Cnty. (Davis I), 5 F.4th 907, 909 n.1 (8th Cir. 2021).

waiving the entity's sovereign immunity "only to the maximum amount of and only for the purposes covered by such policy of insurance . . . and in such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state." Mo. Rev. Stat. § 537.610(1); see also Hendrix v. City of St. Louis, 636 S.W.3d 889, 900 (Mo. Ct. App. 2021) ("Section 537.610 allows an entity protected by sovereign immunity to waive that immunity by either purchasing insurance or by adopting a self-insurance plan for those claims."). Missouri courts construe such waivers "narrowly," instructing that "the extent of the waiver is 'expressly dictated, and limited, by the terms of the insurance policy.'" Hendrix, 636 S.W.3d at 900 (citation omitted). The question of whether a political subdivision has waived its sovereign immunity is a question of law. Id. The district court denied the City sovereign immunity because it found disputed issues of material fact existed as to whether the City was self-insured. The record, however, blatantly contradicts this conclusion.

The record contains the Declaration of Nancy R. Kistler, the Deputy City Counselor for the City of St. Louis, which stated that the "City has not purchased any liability insurance policy to cover torts, personal injuries, or any other claims that do not arise from dangerous property conditions or the operation of motor vehicles." R. Doc. 67-4. The record also contains the Affidavit of Dionne M. Flowers, the Register for the City of St. Louis, which stated that

> the Office of the Register has no record of any City ordinance duly enacted by the City's Board of Aldermen that purports to adopt a plan of self-insurance providing liability coverage for the City for tort claims other than those arising from motor vehicle accidents with vehicles operated by City employees and claims arising from the dangerous condition of public property.

R. Doc. 67-5, at 1. Flowers's affidavit further stated that "the Office of the Register has no record of any ordinance being duly enacted by the City Board of Alderm[e]n that purports to purchase or obtain insurance from the entity known as the Public Facilities Protection Corporation ('PFPC')." R. Doc. 67-5, at 1. The record does

-18-

not contain an insurance policy or ordinance that purports to adopt a plan of self-insurance providing coverage for appellees' claims. Appellees do not dispute that there is no insurance policy in the record, nor do they identify an ordinance demonstrating that the City's Board of Aldermen has duly adopted a self-insurance plan covering appellees' claims. Rather, they argue that the City is self-insured through the PFPC and cite a letter from Julian Bush, the City Counselor for the City of St. Louis, to Alderwoman Megan E. Green, in which Bush explains that the purpose of the PFPC is to "insure the City against all claims" and states that the PFPC "can be properly thought of to be self-insurance." R. Doc. 109-9, at 1. In addition, appellees note that the record includes documents corroborating Bush's description of the PFPC and demonstrating the intent that the PFPC serve as a form of self-insurance. See R. Doc. 109-10, at 2-3; R. Doc. 109-11, at 1-2.

Appellees argue that the Bush letter and accompanying documents demonstrate that the City has waived sovereign immunity, or at the very least, create a disputed question of fact as to whether the City has waived sovereign immunity. The Missouri Court of Appeals, however, recently rejected a similar argument. In Hendrix, the court considered evidence nearly identical to that included in the present record. 636 S.W.3d at 900-01. Specifically, the court considered the same statements from Kistler, Flowers, and Bush as detailed above, along with "the PFPC's articles of incorporation, its bylaws, a document entitled 'City of St. Louis Risk Management Program,' [and] a screenshot from the City's website referring to the PFPC as 'the city's self-insurance program.'" Id. Notwithstanding the Bush letter and other PFPC evidence, the court concluded that the plaintiff "ha[d] not produced any evidence to overcome the City's evidence supporting summary judgment," i.e., Kistler's declaration and Flowers's affidavit, reasoning that the letter from Bush merely reflected the City Counselor's, not the City's governing body's, opinion. Id. at 901. Further, the court concluded that "the PFPC's articles of incorporation, its bylaws, and the 'City of St. Louis Risk Management Program' letter also fail[ed] to show that the City either has liability insurance or is self-insured for negligent supervision and training claims." Id. Here, neither Kistler's declaration nor Flowers's affidavit is contradicted by the Bush letter and

-19-

accompanying documents.[10]   Therefore, we find that the district court erred in concluding that disputed issues of material fact existed as to whether the City was self-insured, and we reverse the denial of sovereign immunity to the City.

## III.

For the foregoing reasons, we dismiss in part, reverse in part, and remand for proceedings consistent with this opinion.   To the extent we find that we lack jurisdiction to consider appellants' arguments, we grant appellees' motion to dismiss.

_____

[10]We have reviewed appellees' motion to supplement the record on appeal and the list of payments made by the PFPC attached thereto.  "Generally, an appellate court cannot consider evidence that was not contained in the record below," but "[w]hen the interests of justice demand it, an appellate court may order the record of a case enlarged."  Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993).  "This authority to enlarge a record is rarely exercised and is a narrow exception to the general rule that an appellate court may consider only the record made before the district court."  Id. Given Kistler's declaration and Flowers's affidavit and appellees' failure to contradict these statements, we find such a list irrelevant to the issue of whether the City was self-insured and deny appellees' motion to supplement the record.